Missouri, Kansas & Texas Railway Company of Texas v. Harry C. Bailey.

Decided January 16, 1909.

**1.—Fellow Servants—Railway—Vice Principal—Statute.**

Under the statute, the test as to whether or not the relation of fellow servants exists between employes of a railway corporation, is whether one is intrusted by such corporation with authority of superintendence, control or command of·the others or has authority to direct the others in the performance of their duties. If so, then the employe who has such authority is, by the very terms of the statute, a vice principal of the corporation and not a fellow servant with his co-employes. Revised Statutes, art. 4560g.

**2.—Same—Railroad Corporation—Negligence of Employes.**

By the fellow servants statute of this State the common law rule to the effect that the negligence of an employe would not be imputed to the master unless such employe had the power to employ and discharge, was abrogated; and the purpose and effect of the statute is to impute to the railroad corporation operating a line of road in this State the negligence of an employe upon whom it has conferred authority or power to influence the action or volition of another employe in the performance of his duties.

**3.—Same—Grade of Employment.**

The statute requires the concurrence of four distinguishing characteristics to constitute two persons fellow servants, namely: (1) they must be in·the same grade of employment; (2) they must be doing the same character of work or service; (3) they must be working together at the same time and place and at the same piece of work; and (4) they must be working to a common purpose; and the requirement that they must be in the same grade

of employment is wanting when one has the authority to command, control or direct the other in the discharge of his duties. Revised Statutes, art. 4560h.

### 4.—Same—Operating Cars.

Where an employe and his colaborers were operating a hand or push car within the yards of the railway company to transport lumber to and from its cars, and, under direction of the foreman, the employe was attempting to fix a turntable, so that the car could be run from one track to another, when he was injured, he was operating a car within the meaning of the fellow servants statute (Revised Statutes, art. 4560f), and engaged in work relating to the company's business.

### 5.—Same—Statute—Constitutional Law—Police Power.

Articles 4560g and 4560h, Rev. Stats., are not repugnant to the Fourteenth Amendment to the Constitution of the United States. They are applicable to all persons of a particular class, affecting alike the employes of all corporations or persons owning or operating a railroad when brought under their influence under like circumstances and conditions, and are a legitimate exercise of the police power of the State.

### 6.—Railways—Defective Appliance—Assumed Risk.

The defense of assumed risk, interposed in an action by an employe against the railway for injuries to the person while operating a car, based on the ground that the injured employe knew of the defect and danger which caused the injury, is not available to the railway under the statute where it is shown that its superior employe, whose duty it was to repair, also had knowledge of such defect and danger before the accident. Gen. Laws 1905, chapter 163.

### 7.—Evidence—Collateral Issues.

It is a well settled rule that all questions tending to raise collateral issues and all evidence offered in support of such issues ought to be rejected.

### 8.—Same—Qualification of Expert—Witness.

While particular instances of a lack of qualification, whenever a special qualification is required for testimony to a certain fact, may be brought out by questions to the witness himself, yet particular instances of mistake or error indicating a lack of expertness are, ordinarily, not provable by extrinsic evidence; and, it seems, proof of such particular instances is only admissible at the discretion of the court when he deems it useful.

### 9.—Same.

Where an expert gave it as his opinion that the plaintiff's limb was permanently paralyzed, and on cross-examination stated that on the trial of another case against defendant he had testified that one Lynch was paralyzed and would never walk again, there was no error in rejecting evidence that Lynch was walking about as well as he ever could.

### 10.—Damages—Verdict.

Where the evidence showed that the plaintiff was thirty-five years of age at the time of the injury, that he had been an industrious and capable man, that he had taught school, was an expert printer and was earning fifty dollars per month, that he was knocked unconscious and had been confined to his bed unable to walk for a period of nine months, and that he is paralyzed and has suffered continuously and such conditions will continue, a verdict awarding damages in the sum of twenty-thousand dollars could not be held excessive in the absence of anything in the record tending to show that it was the result of passion, prejudice or other improper motive.

Appeal from the District Court of Grayson County. Tried below before Hon. B. L. Jones.

*Coke, Miller & Coke, Jno. C. Wall* and *Head, Dillard, Smith &*

*Head,* for appellant.—Appellee A. R. Farr and R. Horner, who were working together in transferring pieces of timber from the yards of appellant's wood shop and planing mills to the wood shop and planing mills at the time of the accident, the alleged negligence of Farr in releasing the handcar being the basis of the suit, were all fellow servants and engaged in the common service of appellant at the time of the accident, and, being so engaged, they were at the same time in the same grade of employment and were doing the same character of work and service and were working together at the same time and place and for a common purpose, even though Farr, being more experienced, had general supervision over the work in hand, and the instructions therefore by the court that appellee and A. R. Farr were not fellow servants, and the refusal of a requested charge that they were fellow servants was erroneous. Missouri Pac. Ry. v. Williams, 75 Texas, 4; Perez v. Railway, 67 S. W., 137; Railway v. Hervey, 89 S. W., 1095; Railway v. Stevens, 83 S. W., 235; Railway v. Johnson, 103 S. W., 447; Railway v. Howard, 80 S. W., 229; Railway v. Cloyd, 78 S. W., 43; Railway v. Cloyd, 84 S. W., 408; Lakey v. Railway, 75 S. W., 566; Railway v. Johnson, 99 S. W., 738; Sherman v. Railway, 91 S. W., 561.

Whether appellee and Farr and Horner, the three men engaged in moving the pushcar at the time of the accident, by reason of the fact that Farr was the experienced servant and was directing the work, were or were not fellow servants under the provisions of arts. 4560g and 4560h, R. S., is immaterial, since they were at the time in the common service of the appellant and were in the same grade of employment and were doing the same character of work and service to a common purpose, were working at same time and place, were consequently fellow servants under the common law rule, and since arts. 4560g and 4560h did not modify or repeal the common law rule as to fellow servants performing the kind of work which appellee and his companions were prosecuting at that time, such work being labor having no peculiar relation to the railroad business. Railway v. Freeman, 79 S. W., 9; Railway v. Johnson, 103 S. W., 447; Johnson v. Railway, 45 N. W., 156; Deppe v. Railway, 36 Iowa, 52.

If arts. 4560g and 4560h, R. S., be so construed as to prevent the appellee and Farr and Horner from being fellow servants, then the same is unconstitutional and void, being violative of that part of sec. 1 of the 14th Amendment to the Constitution of the United States, which prohibits any State from denying any person within its jurisdiction the equal protection of the law, since the work which appellee and his companions were prosecuting at the time of the accident did not relate peculiarly to the railroad business, and since to deprive a railroad company of the defense of fellow servant, available to all other persons under the same circumstances, is not just and reasonable, but arbitrary and capricious classification. Railway v. Freeman, 79 S. W., 9; Railway v. Johnson, 103 S. W., 447; Johnson v. Railway, 45 N. W., 156; Deppe v. Railway, 36 Iowa, 52; Railway v. Ellis, 165 U. S., 150; Railway v. Pontius, 157 U. S., 209.

*Wolfe, Hare & Maxey,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—This suit was instituted by the appellee to recover of the appellant damages for personal injuries alleged to have been received by him on account of the negligence of appellant. The defendant plead a general denial, contributory negligence, assumed risk, and that the negligence of appellee's fellow servants contributed to his injury. A jury trial resulted in a verdict and judgment for the plaintiff in the sum of $20,000, and the appellant prosecutes this appeal.

The material facts are as follows: On February 20, 1907, and for some time prior thereto, appellant was a railroad corporation and owned and operated in this State lines of railway extending into Grayson County. Appellant also at said date owned in its yards at Denison, Texas, various tracks over which lumber and material were transported on handcars to and from its cars, mills, shops and lumber yards. These cars were changed from one track to another by means of turntables, which are about five and one-half or six feet long, with two iron rails fastened on a round platform, which is set on a pivot in the center thereof. Under the wooden platform of each table there is a wooden support, on the top of which there is an iron circle rail upon which the bottom of the wooden platform rests. The rails on the turntable, when everything is in proper repair about the table, are of the same height as the rails of the track, and in changing a handcar or pushcar from one railroad track to another, it is run on the rails of the turntable and stopped about the center of the table and then the table is pushed around so as to bring the rails on it in line with the rails of the railroad track on which the car is to be placed. On February 20, 1907, appellee was and had been in the employ of appellant as a helper and laborer about its shops, yards and lumber mill in the city of Denison, and as such it was his duty to assist in transporting and handling timber, lumber and material in appellant's yards and mill and to assist in operating a handcar or pushcar upon which lumber, timber and material were transported from the lumber yards of appellant to its mill and shops. On said date one of the turntables of appellant in its said yards was defective in that the wooden supports under the platform of the table were old, worn and rotted out and the circle rail gone, so that in using the same to change the handcar in transporting material from one track to another, the table would drop down below the track to which the car was being transferred unless the table was blocked up. Appellee, A. R. Farr and R. Horner, on the date mentioned, in transporting some timber from appellant's lumber yard to its mill by use of the handcar or pushcar, ran said car onto the defective turntable for the purpose of transferring it to another track. In order to make such transfer it was necessary to block up the turntable so that the handcar could run from it onto the track to which it was to be transferred. Farr was appellee's foreman under whose direction and control appellee was working. He directed appellee on the occasion in question to block up said turntable, and in obedience to said direction appellee attempted to obey the instructions of his foreman. Farr was holding the car and appellee expected him to hold the same, and it was his duty to hold said car, and he told appellee that he would hold the

car while he (appellee) did the work blocking up the turntable; but while appellee was down at work blocking up the table, Farr negligently released his hold on the car, thereby causing and permitting the same to run down and strike below the rails of the track to which it was to be transferred, and the wheels of the car left the track. The car was derailed and a large piece of timber was caused thereby to fall from the car and strike appellee and seriously, painfully and permanently injure him. Farr was foreman of appellee and had authority to and did superintend, control, command and direct appellee in the performance of the work in which he was engaged, and it was appellee's duty to obey the instructions of Farr. The defective condition of said turntable was well known to appellant and its servants and employes, who had authority and whose duty it was to keep the same in proper repair, long before appellee was injured. Appellee also knew before and at the time he was injured of the defective condition of the turntable. Appellant, its servants and employes were guilty of negligence in failing to repair the turntable. Farr was a vice-principal of appellant, and was guilty of negligence in failing to hold the car and in releasing his hold on said car. The appellee's injuries were directly and proximately caused by the negligence of appellant and the negligence of Farr, and were not caused or contributed to by any fault or negligence on the part of appellee.

1.    Appellant groups its first, second, third and fourth assignments of error. The first complains of that portion of the third paragraph of the court's charge, wherein the jury were instructed that under the undisputed evidence A. R. Farr had authority to superintend, command and direct the plaintiff, Bailey, in the performance of the work in which he (Bailey) was engaged at the time he alleges that he was injured, and was therefore a vice-principal of the defendant, railway company, and not a fellow servant with the plaintiff. The second assails that portion of the fourth paragraph of the court's charge wherein the jury were charged, that "If an employe of a railway company be injured by the negligence of a vice-principal of such company, without any negligence on the part of such employe contributing to such injury, and same does not result from any risk assumed by such employe, then the negligence of the vice-principal is in law the negligence of the railway company, and in such case the railway company would be liable to such injured employe for whatever damages he sustains by reason of such injury." The third assignment complains of the sixth paragraph of the court's charge in which the facts upon which a recovery was authorized for the plaintiff were grouped, and the acts of A. R. Farr treated as the acts of appellant on the theory that he was its vice-principal. The fourth assignment is based upon the court's refusal to instruct the jury at appellant's request that A. R. Farr was a fellow servant of defendant, and if they believed that plaintiff's injuries were caused by the negligence of Farr to return a verdict in favor of defendant.

Three propositions are submitted under these assignments, the substance of each being as follows: (1) That appellee, Farr and Horner were engaged at the time of the accident in the common service of appellant, were in the same grade of employment, were doing the

same character of work and service, and were working together at the same time and place to a common purpose, therefore they were fellow servants, even though Farr had general supervision over the work in hand, and hence the court erred in instructing the jury that appellee and Farr were not fellow servants, and also in refusing to give the requested charge that they were fellow servants; (2) that whether appellee, Farr and Horner, by reason of the fact that Farr was directing the work, were or were not fellow servants under the provisions of articles 4560g and 4560h, Revised Statutes, is immaterial, because such statutes did not modify or repeal the common rule as to fellow servants, and inasmuch as said parties, at the time appellee was hurt, were engaged in the common service of appellant, in the same grade of employment and were doing the same character of work at the same time and place, to a common purpose, they were fellow servants under the common rule; (3) that if by reason of the provisions of articles 4560g and 4560h appellee, Farr and Horner were not fellow servants, then, since the work which they were doing at the time of the accident did not relate peculiarly to the railroad business, said articles of the statute are violative of that part of section 1 of the 14th Amendment to the Constitution of the United States which prohibits any State from denying any person within its jurisdiction the equal protection of the law.

Article 4560g of the statutes, which was carried into the Act passed at the special session of the Twenty-fifth Legislature, and approved June 18, 1897, provides that "All persons engaged in the service of any person, receiver, or corporation, controlling or operating a railroad or street railway, the line of which shall be situated in whole or in part in this State, who are intrusted by such person, receiver or corporation with the authority of superintendence, control or command of other servants or employes of such person, receiver, or corporation, or with authority to direct any other employe in the performance of any duty of such employe, are vice-principals of such person, receiver or corporation, and are not fellow servants with their coemployes." The test, as to whether or not the relation of fellow servants exists between employes of any person or railway corporation under this statute is, whether one is intrusted by such person or corporation with authority of superintendence, control or command of the others or has authority to direct the others in the performance of their duties. If so, then the employe who has such authority is, by the very terms of the statute, a vice-principal of such person, or railway corporation and not a fellow servant with his coemployes. That Farr was appellant's foreman, upon whom it had conferred the power and authority to control, command and direct appellee in the performance of his work and that Farr fully exercised such authority, is placed beyond all controversy by the undisputed evidence upon the question, which is in part as follows: Appellee Bailey testified: "I went to work for the M., K. & T. Railway Company of Texas on the first day of August, 1906, and was injured while in the employ of the railway company on the 20th day of February, 1907. I was Mr. A. R. Farr's helper. In doing my work there and in getting lumber from the yard to the mill, when Mr. Farr got an order, it was my

business to go out with him and help bring the timber or lumber in. Mr. Farr directed me in the work that I did. Mr. Sampsell was general foreman, but I worked under Mr. Farr, and he gave me instructions and directed me what to do." Russell Horner testified: "At the time Harry C. Bailey was hurt I was working for defendant company in the capacity of mill helper, and so was Bailey. As mill helpers we had to take our orders from Mr. A. R. Farr. Mr. Farr is a mill carpenter and Bailey and I were carpenter helpers working with Farr, who was supposed to tell us what kind of work we were to do in the mill, and told us where to work. Farr, Bailey and myself were operating the pushcar. Farr was the foreman and we were his helpers; he was to bring in the timber and Bailey and I were to do whatever he told us to do. Bailey was under Farr's directions at the time he was injured." A. R. Farr testified: "Bailey, Horner and myself were working with the car at the time of the accident, and were employed in transporting timber on it from the yard to the mill. I was supposed to be foreman of the men operating the car. I was held responsible for it and the other men worked under my directions. Bailey was supposed to be one of my helpers; he was under my directions to the extent of doing whatever I told him to do. I directed Bailey to block up the end of the turntable." John Doyle, master car builder, testified: "I remember the circumstances of H. C. Bailey being injured. He was engaged at this particular time in assisting other men in transporting lumber from the lumber yard into the mill. M. F. Sampsell was foreman in charge of the shop, but at this particular time Bailey was working under the direction of Mr. A. R. Farr." M. F. Sampsell, machine foreman, testified: "I am acquainted with the plaintiff, Harry C. Bailey, R. Horner and A. R. Farr, they having been in the department of which I was foreman. Farr was a wood working machine operator and Bailey and Horner were both helpers working with Mr. Farr. I am in the car department and have a subdivision of that department that I am foreman over. I am under Mr. Doyle, the master car builder, and we have a general foreman, Mr. Kimball, over the different classes of work. Mr. Farr was what they class a machine operator, operating our heavy timber dresser. Bailey was one of his helpers. A helper helps to lift the timbers in the machine and away from the machine and go after it and help to get it out of the lumber yard. Bailey was working under the direction of Farr at the time of the accident, and it was his duty to obey Farr's instructions. Farr's pay was more than Bailey's. Farr was rated at about twenty-three cents an hour and Bailey sixteen cents."

By the statutes referred to the common law rule, to the effect that the negligence of an employe would not be imputed to the master unless such employe had the power to employ and discharge, was abrogated in this State; and the Supreme Court, in construing the Acts of 1891 and 1893 (which were the same as said present statute), in Texas Cent. Ry. v. Frazier, 90 Texas, 33, said that the purpose of the statute was to "impute to the master the negligence of an employe upon whom he has conferred authority or power to influence the action or volition of another employe in the performance of his

duties." That this may be effectually done by giving the one the power or authority to superintend, control, command or direct the other in the discharge of his duties, seems to be the theory of the statute, and can not, in our opinion, be successfully controverted. The statutes mentioned control the decision of the questions we are considering, and the common law rule in so far as it may differ from said statutes can not be invoked. Article 4560h requires the concurrence of four distinguishing characteristics to constitute two persons fellow servants, namely: (1) they must be in the same grade of employment; (2) they must be doing the same character of work or service; (3) they must be working together at the same time and place and at the same piece of work; (4) they must be working to a common purpose. The first named of these essential characteristics, namely, that they must be in the same grade of employment, is wanting in this case, and hence under our statutory definition of "fellow servants" appellant's employe, Farr, and appellee were not fellow servants. (Sherman v. Texas & N. O. Ry. Co., 99 Texas, 571.) Again, that the hand or pushcar which appellee and his colaborers were handling at the time of the accident was a "car" and was being operated by them within the meaning of our fellow servants statute (article 4560f, Rev. Stats., 1895), and therefore related peculiarly to the railroad business, seems to be well established by the decisions of this State. Seery v. Gulf, C. & S. F. Ry. Co., 34 Texas Civ. App., 89; Texas & Pac. Ry. v. Hervey, 89 S. W., 1095; Missouri, K. & T. Ry. v. Smith, 45 Texas Civ. App., 128; Texas & P. Ry. v. Webb, 31 Texas Civ. App., 498; Houston & T. C. Ry. v. Jennings, 36 Texas Civ. App., 375. This disposes of the first and second propositions urged, adversely to appellant's contention.

2. Are articles 4560g and 4560h, which were carried into the Act of the Twenty-fifth Legislature, approved June 18, 1897, without change, repugnant to the 14th Amendment to the Constitution of the United States, which prohibits any State from denying any person within its jurisdiction the equal protection of the law? We think not. We regard the passage of the Acts as but the legitimate exercise of the police power of the State. They are applicable to all persons of a particular class, affecting alike the employes of all corporations, or persons owning or operating a railroad when brought under their influence under like circumstances and conditions. Missouri, K. & T. Ry. Co. v. Smith, 45 Texas Civ. App., 128; Austin R. T. Ry. v. Groethe, 88 Texas, 262; McGuire v. Chicago, B. & Q. Ry., 108 N. W. (Iowa), 905.

3. The court charged the jury that the undisputed evidence showed that the turntable at which plaintiff alleges he was injured was in a defective condition, and that plaintiff knew it was defective prior to the time he was injured, but that the testimony further showed that one John Doyle, who was a superior employe of the defendant to plaintiff, was intrusted by the defendant with authority to repair said turntable, also knew of its defective condition prior to the time when plaintiff alleges he was injured, and therefore plaintiff, in working with said turntable, did not assume any risk or danger arising from its defective condition. The appellant requested the

court to instruct the jury that the undisputed evidence showed that plaintiff at the time and before he was injured, knew that said turntable was out of repair, if in fact it was defective, and that he assumed the risk of danger of using it, and therefore to return a verdict in favor of the defendant. The giving of the first charge and refusal of the second as requested by appellant, are made the basis, respectfully, of the fifth and sixth assignments of error; and the questions raised by them are practically the same as those heretofore discussed. It is contended that appellee at the time he was injured was engaged in ordinary labor, having no particular relation to the railroad business; that he knew the condition of the turntable and assumed the risk of using it; that whether Doyle, a superior, and intrusted by appellant with authority to remedy defects in its turntable, knew of the condition of the turntable before appellee was injured, and whether the defense of assumed risk was or was not available to appellant under the provisions of chapter 163, Acts of 1905, is immaterial, since appellee knew of the defective condition of the turntable and assumed the risk of danger therefrom under the common law rule, said Acts not having repealed or modified the common law rule as to servants performing ordinary labor having no peculiar relation to the railroad business, and such being the character of work which appellee was prosecuting; that if chapter 163, Acts of 1905, make the defense of assumed risk unavailable to appellant of defects of which appellee knew, then the same is repugnant to that part of section 1 of the 14th Amendment to the Constitution of the United States, which prohibits any State from denying any person within its jurisdiction the equal protection of the law. Neither of these propositions can, in our opinion, be maintained. The defense of assumed risk, interposed in an action of this character, based on the ground that the injured employe knew of the defect and danger which caused the injury, is not available to the railway company, under chapter 163, Acts 1905, where it is shown that its superior employe, whose duty it was to repair, also had knowledge of such defect and danger before the accident. As said in reference to articles 4560g and 4560h, this statute controls and fully authorized the court's action of which complaint is here made; and if it be conceded that it is essential, in order to bring an injured employe within the operation of this statute, to show that he was engaged at the time of his injury in the performance of work "peculiar to the railroad business," then we think it was shown that appellee, at the time he was injured, was engaged in that character of business.

4. The Act in question was not violative of the 14th Amendment to the Constitution of the United States. It does not impair the obligation of contracts nor interfere with vested rights. It is simply an exercise of the police power of the State over its creature. "Railroad corporations hold their property and exercise their functions for the public benefit and are therefore subject to legislative control. The Legislature, which has created them, may regulate the mode in which they shall transact their business, the price which they shall charge for the transportation of freight and passengers, the speed at which they may run their trains, and the way in which they may cross or

run upon highways and turnpikes used for public travel," etc. People v. Boston & A. Ry., 70 N. Y., 569. The Legislature may also make such regulations as are deemed necessary and appropriate for the protection of the lives of persons carried on railroads, or for the safety of those in the service of railway companies. It has the authority to declare when and under what circumstances the doctrine of fellow servants shall apply in cases arising between railroads and their employes, and we know of no good reason why the same may not be done with respect to the defense of assumed risk. The court's action in giving the charge assailed and in refusing the special charge requested was authorized by the statute of 1905, and the fifth and sixth assignments will be overruled.

5. There was no error in refusing appellant's requested charge, to the effect that if the failure of Farr to hold the car, or the defective condition of the turntable or the failure of Farr to hold the car and the defective condition of the turntable combined caused plaintiff's injuries, and the jury believed that a person of ordinary care and prudence could not and would not have anticipated and foreseen the danger from the failure to hold the car or the defective condition of the turntable, to find for defendant. The evidence did not call for the giving of this charge. It conclusively appeared that Farr and the employes of appellant who were aware of the defective condition of the turntable and whose duty it was to repair the same, considered it dangerous for appellee to undertake the work of blocking the table, as he was directed to do, unless the car was securely held while he was so engaged. Appellee testified that he told Farr to hold the car and Farr said, "I will; hurry up." Horner swore that Bailey told Farr to hold the car and Farr said he would; that Farr turned the car loose and it rolled back, hit the end of the other rail and that threw the car off the track and caused the timber to fall off on Bailey. Farr said that before turning the car loose he directed Horner to hold it, and Doyle, the master car builder, testified that when he was informed of the defective condition of the tables, he thought they could be used in the condition they were in by the men exercising due caution, and directed Sampsell to instruct them to be careful. If it was not apparent from the nature of the defect in the turntable, that unless the car was held while the work of blocking the table was being done, it was dangerous to attempt the work, clearly we think the fact that it was dangerous to undertake it under such circumstances and that Farr so considered it, was placed beyond controversy by the undisputed testimony.

6. Dr. W. C. Rutledge testified in behalf of appellee that he had treated appellee since soon after he was injured; that he had made several examinations of him, and his opinion is that appellee's left limb is permanently paralyzed. On cross-examination this witness testified that he remembered a man by the name of D. D. Lynch; that he had stated as a witness on the trial of a suit brought by the said Lynch against the appellant, that, in his opinion, Lynch was paralyzed and would never be able to walk again. Appellant then offered to prove by E. R. Andrews that he saw Lynch about three weeks before the trial of this case, and that he was able to

walk without the assistance of any crutch and practically as well as he ever could. This testimony was objected to by appellee and the objections sustained. The court did not err in excluding this evidence. It was not competent, we think, to discredit the witness, Dr. Rutledge, who had testified as an expert, in the manner attempted. It is a well settled, general rule that all questions tending to raise collateral issues and all evidence offered in support of such issues ought to be rejected. It is said that one of the reasons why a collateral question should not be entered into in the trial of a case is, that it would "add to the trial so much consumption of time and confusion of issues as to be intolerable." The admission of the testimony excluded would have introduced into this case a collateral matter, the investigation of which would have unduly prolonged, it seems, the trial and doubtless resulted in a confusion of the real issues. Again, while particular instances of a lack of qualification, wherever a special qualification is required for testimony to a certain fact, may be brought out by questions to the witness himself, yet particular instances of mistake or error indicating a lack of expertness are, ordinarily, not provable by extrinsic testimony. This seems to be especially true of questions relating to prior instances out of court. Putting it in the strongest light for appellant, it would seem that proof of such particular instances by other witnesses is only admissible at the discretion of the court when he deems it is useful. Kennett v. Engle, 105 Mich., 693, 63 N. W., 1009; 2 Wigmore on Evidence, pages 1147-1148-1164.

7. Nor do we think the court erred in refusing to grant appellant's motion for a new trial, because of the alleged newly discovered evidence as to the mental and physical condition of appellee prior to the time of his injury. The newly discovered evidence alleged was in substance: That since the trial of the case defendant had discovered that in 1892 plaintiff was afflicted with cerebro spinal meningitis and was adjudged insane in 1893 and confined in the Terrell Asylum about four months; that he was admitted to the asylum again at Austin, May 16, 1894, and discharged September 10, 1894, restored. It is doubtful whether appellant showed the use of sufficient diligence before the trial to discover this testimony to meet the demands of the law; besides, this ground of appellant's motion was contested by appellee, and in view of the remoteness of the time when appellee was afflicted as charged, and the overwhelming testimony with regard to his complete recovery and restoration to perfect health when discharged from the asylum, which had continued up to the time of the trial of this case, and the improbability of a return of the malady, it is not at all likely that a different verdict would have been reached upon another trial. The granting of the motion rested largely within the discretion of the trial court and certainly we can not say that the trial court in overruling appellant's motion, under the circumstances shown, abused that discretion.

The verdict is attacked as being excessive, but we are not prepared to say, in view of the testimony, that it is. On the contrary, while the verdict is large, it seems to be well supported by the testimony

and nothing appears in the record tending to show that it is the result of passion, prejudice or other improper motive. The evidence showed that appellee was 35 years of age at the time he was injured, and that he had been an industrious and capable man; that he was knocked unconscious and has been confined to his bed, not able to walk a step from the date of his injury up to the date of the trial, a period of about nine months. That he is paralyzed and has suffered continuously; that his condition is permanent and that he will probably continue so to suffer. He had taught school, was an expert printer, and was earning at the time he was injured fifty dollars per month. The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

We are requested by appellant to make additional findings of fact. This request is granted in part. Farr directed appellant what to do. When lumber in the yards was needed in the mill it was loaded on one of the hand or pushcars and conveyed on said car over the tracks into the mill. There are several tracks, probably four, and one of them is called the main line track. The car with which appellee was working at the time he was injured had four wheels, and was about two feet high from the ground, about four feet wide and about six feet long. The wheels of the car were about sixteen inches high. The car is some higher than a regular handcar on a railroad. The cars were all the same size. This pushcar was a little car used around appellant's car shop and yard for the purpose of handling lumber and material and things of that kind and was not used for the purpose of riding on. This car was moved by being pushed along the track. The tracks over which the pushcars are run to transport lumber, run about 200 feet from the mill or more in the lumber yard. They also run around the shop premises, run to the blacksmith shop out to the shed. The mill referred to is where the car building woodwork is done. It is where they build and repair cars for the defendant railway company. These tracks out through the lumber yard were used in connection with that work to transport lumber from the outside to the mill to have the work done, all the lumber and timber being transported into the mill on these pushcars or handcars.

The motion for additional findings of fact, except as indicated above, is overruled. The motion for rehearing is also overruled.

*Overruled.*

Writ of error refused.