TEXAS BLDG. CO. v. REED.   (No. 628.)†

(Court of Civil Appeals of Texas. Amarillo. May 23, 1914. Rehearing Denied June 27, 1914.)

1. MASTER AND SERVANT (§ 180*) — FELLOW SERVANTS—OPERATION OF RAILROAD—STATUTE.

Under Rev. St. 1911, art. 6640, making a railroad liable for injuries to its servants while engaged in the work of operating its cars, by reason of the negligence of any other servant, a railroad construction company operating an engine and work train, and engaged in raising rails on a railroad and filling in under them, known as surfacing, and employing plaintiff as one of a gang picking up ties and rails along the track and loading them on flat cars, was engaged in the operation of a railroad, and plaintiff was engaged in the work of operating a train thereon, so that the company was liable to plaintiff for injury occasioned by his fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359–361, 363–368; Dec. Dig. § 180.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

2. MASTER AND SERVANT (§ 316*)—MASTER'S LIABILITY—"VICE PRINCIPAL"—STATUTE.

Under Rev. St. 1911, art. 6641, providing that all persons engaged in the service of any person operating a railroad, and intrusted by such person with superintendence of its other servants, or the direction of their work, are vice principals, and not fellow servants with their coemployés, the foreman of a gang of laborers in the employ of a railroad construction company engaged in the operation of a railroad, directing the loading of ties, rails, etc., on the flat cars of the company's work train, was not an independent contractor, but was a vice principal, so as to render the company liable for his negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1242, 1243; Dec. Dig. § 316.*

For other definitions, see Words and Phrases, vol. 8, pp. 7313–7316, 7829.]

3. MASTER AND SERVANT (§ 297*)—INJURY TO SERVANT—VERDICT—CONFORMITY TO FINDINGS.

In an action by the servant of a railroad construction company for personal injury, in which the complaint alleged that the boss in charge as agent of the company was negligent in not having any one present to give the signal for laying down or dropping rails, and in allowing any and all of the men lifting a rail to yell and give orders at the same time, and in placing most of the strong men at one end of the rail and the weaker with plaintiff at the other, jury found that the plaintiff and those who gave the confusing orders as to the dropping the rail were in the same grade of employment working to a common purpose, that neither the company nor its foreman adopted suitable signals for the loading of rails with safety to plaintiff, that the company was operating a railroad, that the foreman was its agent, that the company was negligent, and that plaintiff was free from contributory negligence. *Held*, that the findings amounted to a finding that the company was negligent in its system of signals, and that a judgment for defendant thereon was properly refused.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1195–1198; Dec. Dig. § 297.*]

4. MASTER AND SERVANT (§ 201*)—MASTER'S LIABILITY—CONCURRENT NEGLIGENCE.

A servant injured by the concurrent negligence of his master and a fellow servant can recover against the master, because in such case the master is one of two joint wrongdoers, against either of whom the party injured has an action.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*]

5. MASTER AND SERVANT (§§ 277, 330*)—ACTION FOR INJURY — SUFFICIENCY OF EVIDENCE — INDEPENDENT CONTRACTOR.

In an action for personal injury to plaintiff, one of a gang employed by a railroad construction company in surfacing a railroad, evidence *held* to show that the company's boss or foreman directing the work was not an independent contractor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 953, 1270–1272; Dec. Dig. §§ 277, 330.*]

6. MASTER AND SERVANT (§ 297*)—ACTION FOR INJURIES TO SERVANT — FINDINGS — CONSTRUCTION.

In an action for personal injury by the servant of a railroad construction company while working under the direction of its boss or foreman, a finding that the foreman was a subcontractor or agent, together with a finding that he was operating a railroad as agent of the construction company, were not conflicting, and authorized a judgment on the conclusion that he was not an independent contractor, but the agent of the company.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1195–1198; Dec. Dig. § 297.*]

7. JUDGMENT (§ 256*)—CONFORMITY TO VERDICT AND FINDINGS—DAMAGES.

In a servant's action for personal injury, where the jury found that his loss from being prevented from labor and by reason of mental and physical pain was $78 and $500, respectively, and, in answer to another issue, that he was permanently injured as to his earning ability to the amount of $578, a judgment reciting that it appeared that the jury had rendered a double verdict for $578, that counsel for plaintiff had remitted all in excess of that amount, and therefore rendered for such amount, was within the power of the trial court.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446–454; Dec. Dig. § 256.*]

8. APPEAL AND ERROR (§ 1073*)—HARMLESS ERROR.

In such case the fact that judgment was not rendered for all the amount found by the jury did not injure the defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4240–4247; Dec. Dig. § 1073.*]

9. NEW TRIAL (§ 162*)—CONDITIONS ON DENIAL—REMITTITUR.

It is within the power of the trial court to permit a remittitur, rather than grant a new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 324–329; Dec. Dig. § 162.*]

Appeal from Jack County Court; J. P. Simpson, Judge.

Action by Raymond Reed against the Texas Building Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Flournoy, Smith & Storer, of Ft. Worth, for appellant. Henley & McComb, of Jacksboro, for appellee.

HUFF, C. J. The appellee, Raymond Reed, instituted this action against the Texas Building Company, appellant, and against W. J. Clarke. Upon trial before a jury judgment was rendered against appellant for the sum of $578, from which appellant appeals. The appellee did not procure service against W. J. Clarke, and the suit was discontinued as to him, and the issues were tried as between appellant and appellee. It is alleged substantially in the petition: That the appellant was engaged in the work of raising rails on a railroad and filling in under them, known as "surfacing." The line of railway upon which such work was being done was the Gulf, Texas & Western Railway Company, between Jacksboro and Saylesville. Part of the work alleged as then being done was the taking up of the extra cross-ties, steel rails, etc., along said line of railway. That appellant employed and worked a great number of men at the date in question, and was operating a railroad and running an engine and work train with flat cars upon

the said line of road, which was being surfaced. That W. J. Clarke was on said date, June 4, 1913, employed and working for appellant as foreman and boss of a gang of laborers under the employment of appellant, and on that day Clarke was in command and had charge and direction of the work and of appellee and other employés. At that time appellee was working for appellant, together with other employés, under the superintendence of Clarke, and with the work train, and that they were then operating it on the line of railroad aforesaid, and stopping it along the lines at various points, picking up crossties and extra steel rails and other material along the track and loading the same on flat cars. While appellee and others, under the direction of Clarke, were attempting to load a steel rail on a flat car, and before the end of which appellee had hold of had been raised high enough to turn loose, without great injury to himself and others, the superintendent or boss and others began yelling conflicting calls and orders, which were confusing to appellee, so that he was unable to tell what was meant, and the men who were carrying the other end dropped their end of the rail too soon, which caused the rail to fall upon and catch, mash, and crush appellee's hand. It is alleged that he was wholly without fault or negligence, and that his injury was caused by the negligence of appellant, its agents, and employés—

"in charge of said engine and cars, in this: That the boss in charge as agent of said company was negligent and careless in the respect that he did not have some one person to give the signal word for letting down or dropping the rails; that he was negligent and careless in the respect that he allowed any and all the men that were raising and lifting the rails to yell, holler, and give orders at the same time; and, further, that he ordered and placed most of the strong men at one end of the rail which plaintiff and others were attempting to load at the time, and that this injury to plaintiff resulted, and placed weaker and insufficient number at the other end with plaintiff."

The appellant answered by general denial and contributory negligence that the acts complained of by appellee, to the effect that there were confusing orders given by appellant's employés, and that such acts or omissions, if any, where by fellow servants of appellee; that the work which appellee and his colaborers were engaged in at the time was under the exclusive charge and control of W. J. Clarke, who had entered into a contract in writing with appellant for the consideration mentioned in the contract, and that appellee and those who were working with him in the performance of the work were the employés of Clarke, and under his direct supervision and control, and were not employés of appellant, nor under its control; that the work being done was for Clarke, and not for appellant.

The appellee answered, by supplemental petition, that the contract set up as having been made between appellant and Clarke was a subterfuge and an attempt on the part of appellant to defeat liability, and was an insidious attempt to shift its own liability onto Clarke, who was pecuniarily irresponsible; that Clarke was not an independent contractor, but a mere subcontractor and agent and employé of appellant; if said contract did create the relation of an independent contractor, that such relation had been destroyed and abrogated by a practical construction of said contract by the parties themselves, and that appellant did in fact exercise direction, control, and management of the details of the work to be done under the contract, and exercised direction and control as to the mode, manner, and means of doing said work and exercised control, etc., of the men working under Clarke upon the work; that it was not binding upon appellee; and that he never heard of such relation existing between Clarke and appellant until after this suit was instituted.

The appellant assigns error upon the refusal of the trial court to give its specially requested peremptory charge to find a verdict for it (1) because the evidence did not show that Clarke had power and authority to employ and discharge appellee for appellant, and they were therefore fellow servants; (2) because the undisputed testimony showed that appellee's injuries were caused by the negligence of the fellow servants of appellee. And the fourth assignment is to the effect that the court erred in refusing to render judgment for appellant on its motion to do so, because it appears from the finding of the jury to the third specially requested instruction that appellee was a fellow servant with those whose negligence caused his injury.

The appellant, the Texas Building Company, entered into a contract with the Gulf, Texas & Western Railway Company to build a railroad on what is known as the Jacksboro extension to Saylesville, and that it did do so and employed Clarke and others on the work. Under the contract with the railway company, that company was to furnish appellant a work train to use in the construction of the road, and that it was to pay for its use. Some time during the construction of this road one Samuel Kaye, an agent and employé of appellant, entered into a contract of employment with the appellee at Mineral Wells. The appellee had been directed to this work by an Employers' Bureau at Ft. Worth, and Kaye met him at Mineral Wells and sent him out upon the work, agreeing to pay him $1.75 per day. Kaye told the appellee at the time that he (Kaye) was then working for appellant, and on that day he took appellee to the hotel, paid for lodging until he could be sent out over the road on to the work, and paid his expense at the hotel, and bought him a ticket, telling appellee that the conductor would put him off at the place where the work was being done. The appel-

lee at that time did not know of any contract existing between Clarke and the appellant, but thought that he was working for appellant. The facts in this case show that appellee received his injuries about June 4, 1913, substantially as alleged by him, and the facts are sufficient to show that appellant had no rules or system with reference to directing the men to act in unison in laying down or handling steel rails. Clarke himself testifies that they had no such rule or system, and that it would have been safer or better for them to have had such rule. The evidence is sufficient to show that, if appellant at this time was in charge of this work, it was negligent in the manner in which this work was done under its direction and management. Appellant introduces in evidence a contract entered into between it and Clarke, which will be referred to more in detail, under the consideration of the proper assignment.

[1, 2] We think the facts in this case show that, while appellant was a private corporation, it was nevertheless engaged in the operation of a railroad within the meaning of articles 6640 and 6641, R. S. 1911. Cunningham v. Neal, 101 Tex. 338, 107 S. W. 539, 15 L. R. A. (N. S.) 479. Under the facts of this case, we are inclined to think that appellant was engaged in operating a railroad, and that appellee was engaged in the work of operating a train thereon, and under such facts appellant would be liable to appellee for injury occasioned by his fellow servants. This case in its facts is much the same as those in the case of Railway Co. v. Thornton, 46 Tex. Civ. App. 649, 103 S. W. 437. The jury found that appellee was injured while engaged in the work of operating a train. The Supreme Court, in the case of Railway Co. v. Anderson, 102 Tex. 402, 118 S. W. 127, in referring to the Thornton Case, suggested that it had features which may distinguish it from the cases of Railway Co. v. Johnson, 47 Tex. Civ. App. 74, 103 S. W. 447, and Railway Co. v. Howard, 97 Tex. 513, 80 S. W. 229. In the recent case of Glover v. Houston Belt (Civ. App.) 163 S. W. 1063, Judge Higgins calls attention to the conflict in the decisions, and we think announces a correct rule. Whether we are correct or not in our views upon this question, we nevertheless think that Clarke was vice principal of appellant and in charge of the work, such as would render appellant liable for negligence on his part. If Clarke was not an independent contractor, then under ·article 6641, R. S. 1911, and the evidence in this case, and the findings of the jury, he was a vice principal and intrusted with authority to superintend, control, and command other servants then on the work being done, and that he had the right to direct appellee and other employés of the appellant engaged in that work. The common-law rule that the negligence of an employé could not· be im-puted to the master, unless such employé had the power to employ and discharge, is abrogated by statute, in so far as it shall apply to persons operating railways within this state. Railway Co. v. Frazier, 90 Tex. 33, 36 S. W. 432; Railway Co. v. Bailey, 53 Tex. Civ. App. 295, 115 S. W. 601–605. The case of Lantry-Sharpe Co. v. McCracken, 105 Tex. 407, 150 S. W. 1156, cited by appellant, recognizes the rule substantially as above set out. It is there said:

"Plaintiff's cause of action is founded upon the common law. There is no statute in this state controlling actions against persons or corporations other than railroads and street railways for injuries to the person not resulting in death. Those provisions of our law defining who are fellow servants and who are vice principals relate exclusively to employés of railroads and street railways."

We do not think the trial court was in error in refusing to peremptorily charge the jury to find for appellant, on the grounds above assigned by appellant.

[3] The fourth assignment is based upon the trial court's refusal to sustain appellant's motion to instruct a verdict for it upon the answer of the jury to the third special issue, requested by appellant, submitted to them for their findings. That special issue is as follows:

"Was plaintiff and those who gave the conflicting and confusing orders in regard to loading the rail which injured plaintiff in the same grade of employment, doing the same character of work, and working together at the same time and place, and at the same piece of work, and to a common purpose?"

To which the jury answered: "Yes."

[4] At the request of appellee, the court submitted the following issue: "Was plaintiff engaged in loading a steel rail on a flat car at the time of the alleged injury?" To this the jury answered: "Yes." "If so, did the Texas Building Company or W. J. Clarke adopt and use certain and suitable rules and systems of signals for the loading of such steel rail with safety and protection to the plaintiff?" To which the jury answered: "They did not." The jury found that the Texas Building Company was operating a railroad at the time and place appellee was injured, and that Clarke was operating the railroad as agent for appellant, and that the appellee was injured while engaged in assisting to operate the road for defendant, or in work which was incident to and connected with the purpose of operating said railroad. They also found that Clarke was the agent of appellant in such work, and that appellant was negligent, and that the appellee was not guilty of contributory negligence. The allegation of the petition, in describing the manner in which the injury was occasioned, alleges that the servants of appellant yelled conflicting and confusing orders, so that appellee was unable to tell what was meant by them, and that the other employés at the opposite end of the rail from appellee dropped their end of the rail too soon, which caused

the rail to fall and catch appellee's hand. The negligence alleged was (1) that "the boss in charge as agent of said company was negligent and careless in the respect that he did not have some one present to give the signal and words for laying down or dropping the rail; (2) that he was negligent and careless in respect that he allowed any and all the men that were raising or lifting the rail to yell, holler, and give orders at the same time"; (3) that he placed most of the strong men at one end of the rail, and the weaker with plaintiff at the other. We think the findings of the jury are to the effect that appellant and its superintendent of the work were negligent in failing to adopt suitable rules or a system of signals for loading steel rails, and as a result the men assisting gave inconsistent, confusing, and conflicting directions. The jury do not find that these men so assisting and giving the order were negligent, but, under the pleadings and the issues, found such conflicting direction was the result of the negligence of appellant in not giving a system which would have prevented such confusion. The evidence shows that Clarke himself was present, and the work was being done under his supervision, and that he had also a foreman, a Mr. Sullivan, on the flat car on which the rail was being loaded. He admits there ought to have been one to give signals when to drop the rail. It is manifest the jury found that, in failing to give such a signal, the appellant was negligent. While they state the fellow servants of appellee were the ones yelling confusing orders at that time, they do not find such was negligence on their part. Appellee did not allege that these men were negligent in so doing, but that appellant was negligent in its failure to so direct the work as would prevent such confusion; but, if the findings of the jury shall be construed as a finding of negligence on the part of the fellow servants of appellee, the findings under the issue clearly indicate that appellant and its vice principal, Clarke, were negligent in the particulars alleged. The doctrine is well settled in this state that a servant injured by the concurrent negligence of his master and a fellow servant can recover against the master. This, it is said, is because the master in such case would be one of two joint wrongdoers, or tort-feasors, and as such would be responsible to the servant. Having been injured by the combined negligence of the master and his fellow servant, the injured party may have his action against either or both. Railway Co. v. Swinney, 34 Tex. Civ. App. 219, 78 S. W. 547; Railway Co. v. Jackson, 93 Tex. 262, 54 S. W. 1023. We think, under the findings of the jury, the pleadings of the parties, and the evidence, that the trial court properly overruled the motion to render judgment for appellant on the findings of the jury, in answer to the third special issue requested by appellant.

[5] The second assignment of error is:

"That the court erred in refusing to give defendant's special instruction No. 1, because the evidence showed that Clarke was an independent contractor, and that plaintiff was an employé of said Clarke."

The proposition presented thereunder is substantially that the evidence conclusively showed that Clarke was an independent contractor for that part of the road covered by his contract. The evidence in this case shows that appellant had a contract with the Gulf, Texas & Western Railway Company for the construction of the roadbed and track at the point on the road where appellee was employed. The appellant introduced in evidence a contract signed by it and W. J. Clarke, by which Clarke was to furnish and pay for all tools and labor necessary for and to lay and surface all the track and switches for the Jacksboro-Saylesville extension of the Gulf, Texas & Western Railway Company, to the entire satisfaction of the railway company's chief engineer. Clarke agreed to unload the materials required and store in yards; to load all material on cars for distribution and use in laying the track, and to hold appellant harmless from suits from damages and injuries to persons from Clarke's acts or those of his employés or the railroad company, while working under the direction of Clarke; to execute a bond for the sum of $7,500; pay all bills promptly during the life of the contract for labor, material, and supplies, and, in case Clarke should fail, appellant might pay such bills and deduct the amount from any money due Clarke; to start actual track laying as soon as the grade is ready for track; and to complete track laying and surfacing and in fact all work covered by the contract by December 31, 1912, and to pick up all track materials left along the line when track is complete, etc. Clarke agreed to carry liability insurance covering his employés. The appellant agreed to furnish Clarke necessary train service to enable Clarke to execute the work covered by the contract. Clarke was to receive for all track laying and surfacing and handling all track material $665 per track mile, payment to be made on the 20th of each month. Appellant reserved the right to take charge of the work covered by the contract at any time Clarke should fail to comply with the terms and conditions of same, or when the work should prove unsatisfactory to the chief engineer of the railway company. The appellant was to furnish all necessary track facilities for unloading material. As above shown, the evidence is that appellee was injured June 4, 1913, in the manner alleged by him in his petition, and while engaged in the work alleged; that the parties, Clarke and the employés, working over and with appellee, were negligent in the particulars alleged. The jury found, under proper instructions from the court, that Clarke was not an independent contractor, but the agent of appellant at

the time appellee was injured. The facts in this case are sufficient to warrant the finding that the work by Clarke was being done under the direct management of Samuel Kaye and others, who, it is conclusively shown, were at that time in the employ of appellant. The appellee was employed by Mr. Kaye to work on the road, and he made the contract with appellee to work on the road, paid his railroad fare to the work and his hotel expenses at Mineral Wells, where he was employed. The testimony is sufficient to warrant the jury in finding that Kaye directed the work as it was being done on the road, and directed the employés in the work. He did this when Clarke was present, as well as when he was absent. The testimony indicates that Clarke, Kaye, and Hughes directed the work and the manner in which it should be done. The evidence shows that Kaye told appellee when he employed him, that he (Kaye) was then working for appellant, and that he never told him that he (appellee) was employed by Clarke. Appellee knew nothing of Clarke's contract until after the suit was filed. His wages were paid by check signed by appellant, per Kaye, and countersigned by Clarke. When appellee was injured, Kaye told the doctor to treat him, and that appellant would pay his bill, which it did afterwards. Kaye also, for appellant, paid the hotel bill of appellee at which appellee stopped while his injuries were being attended to, which was something like a month. Kaye testified that appellee was working for Clarke when he was hurt. Kaye says when he employed hands he did so for Clarke, who paid him for his time. He also says that he had nothing to do with Clarke's men, only when he was working for Clarke, and said he would not swear that he told Reed he would work for Clarke, but does testify that he told Reed he (Kaye) was working for appellant. Mr. Bock, the general superintendent for the railroad company, testified that the railway company had a contract with appellant to do the work, and for that purpose the railway company furnished a work train to appellant to do the work, and for the use of which it paid the railway company, and that appellant had complete charge of the train and crew while they used it; that appellant had several men in charge of the work during the entire time the work was in progress. One of them was John Hughes, who stayed on the work in a tent and directed and looked after the work. He testified that Zimmerman and Kaye had charge of the office of appellant at Jacksboro at different times. If the work did not come up to the contract, the railway company made complaint to the appellant. They made several complaints, some to Hughes and some to Kaye. Clarke used the train which appellant, under the contract, had the right to use. We think the facts in this case were sufficient to warrant the jury in finding that the appellant company exercised control over the manner in which Clarke was to do the work, the means by which it was to be done, and that the persons engaged in the work with Clarke were under the control of and management of appellant, and that Clarke in fact was but an employé. The facts were also sufficient to warrant the conclusion that appellant, under the provisions of the contract, had taken immediate charge of the work. While Clarke testified he was doing the work under the contract, he does not testify that he employed appellee or the other men on the work, or that he paid them. On the contrary, the evidence shows that appellant paid the wages and paid the physician and hotel bills for appellee while he was under treatment for the injury, as well as that of another employé who was injured at the same time and in the same way. The trial court gave the jury a proper charge as to what would constitute an independent contractor, and when he would not be such. The jury had sufficient evidence, in our judgment, to warrant them in finding for appellee on this question. Wallace v. Southern Cotton Oil Co. (Sup.) 40 S. W. 399; Southern Cotton Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638; Drennon v. Patton-Worsham Drug Co. (Civ. App.) 109 S. W. 218. The second assignment will therefore be overruled.

[6] Under the fifth assignment it is asserted that the findings of the jury in answer to the seventh issue is uncertain in its meaning. The issue submitted is as follows: "Seventh Issue. Was W. J. Clarke an independent contractor or a subcontractor and agent of the Texas Building Company?" To which the jury answered: "Subcontractor or agent." The eighth issue submitted: "Was W. J. Clarke engaged in operating a railroad?" The jury answered: "Yes." "If so, was it for himself, as an independent contractor, or as agent of the building company?" The jury answered: "As agent of the Texas Building Company." The jury clearly answered the seventh issue when their answer is read in the light of the issue submitted that Clarke was not an independent contractor. A subcontractor may, under certain facts, be merely an agent or employé within the meaning of the rule making the master liable. The jury, by their answer to the seventh issue, leave it doubtful whether Clarke was an agent of the building company or merely a subcontractor; but all doubt as to what they did find is removed by their answer to the eighth issue, which makes it clear that they found that Clarke was not an independent contractor, but was then the agent of the Texas Building Company. There is no necessary conflict in the findings of the jury, and hence the court could render the judgment upon the manifest conclusion that Clarke was not an independent contractor, but was then the agent of appellant. Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Railway Co. v. Bender, 32 Tex. Civ. App. 568, 75 S. W. 561.

[7-9] The appellant, by the sixth assignment, urges error on the part of the trial court in rendering a judgment on the verdict of the jury for the sum of $578, because in doing so appellant asserts the court in fact set aside the findings of the jury on one issue submitted by them. In answer to the issue submitted by the court to the jury to find the damages to appellee by "being prevented from engaging in labor, and by reason of mental and physical pain," they found $78 for loss from inability to engage in labor and $500 for physical and mental suffering. Appellee requested the issue submitted to the jury as to whether appellee was permanently injured as to his earning ability. They, in answer to this issue, found $578. The court, in its judgment entry, recites that it appears the jury had rendered a double verdict for the sum of $578, and that it was the purpose of the jury to render but one verdict for the sum of $578 for loss of time, mental and physical pain, and permanent impairment of earning ability, and that, counsel for appellee, in open court, having remitted all in excess of $578, and agreed and asked the court to render a judgment only for the sum of $578, the judgment was therefore rendered for such amount. The appellee filed a remittitur of all in excess of the sum of $578. The jurors, each trying the case, made affidavit· to the effect that it was their intention to render a verdict only for the sum of $578, covering the entire damages, to which appellee was entitled. We think, from reading the verdict itself, this was the manifest, intended purpose of the jury. The verdict supports the judgment rendered, and the fact that it was not rendered for all, found by the jury, did not injure the appellant. The appellee had the right, we think, to file a remittitur and cure any error by reason of an excessive verdict. It has been held that it is within the power of the trial court to permit a remittitur, rather than grant a new trial. Railway Co. v. Jackson, 61 S. W. 440; Railway Co. v. Johnson, 24 Tex. Civ. App. 180, 58 S. W. 623. This judgment is not one rendered contrary to the verdict, but is based on the finding of the jury, and we believe the jury only found for the sum of $578 damages for appellee. They evidently so understood that such was their verdict. The assignment is not that the verdict was excessive, and that the trial court should have set it aside, but is only that the court should not have rendered a judgment for a less amount than that found by the jury. The appellee clearly had the right to relinquish any amount so found and have it so stated in the judgment. If the judgment had been entered up for the full amount found by the verdict of the jury, a remittitur could have been filed under the decisions of our various courts and the statutes, and we see no reason why it could not be so stated in the judgment entry that a re-

mittitur had been so filed, and the judgment decree a recovery for the amount of the verdict, less the remittitur.

We do not believe there is any reversible error assigned, and the judgment is affirmed.