UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant,

v.

John M. MORGAN, Appellee.

No. 14464.

Court of Civil Appeals of Texas.

Houston.

April 1, 1965.

Rehearing Denied April 29, 1965.

Fulbright, Crooker, Freeman, Bates & Jaworski, J. S. Covington, Jr., Houston, for appellant.

Baggett, Kirk, Van Keuren & Baggett, Russell T. Van Keuren, Houston, for appellee.

COLEMAN, Justice.

This is a Hurricane Carla case. Judgment was entered in favor of the insured based on a jury verdict that all damage sustained was solely caused by wind or by rain entering through openings previously caused by wind. It is appellant's position that since it is undisputed that flood waters entered the houses involved, and covered the personal property insured, some damage resulted, and, therefore, the jury verdict was not supported by the evidence.

A dwelling, a warehouse building, and the contents of the warehouse, belonging to appellee were insured by appellant against loss caused by windstorm or hurricane. Section III of the policy provided that the company shall not be liable for loss caused by tidal wave, high water, or overflow, whether driven by wind or not, nor for loss caused by rain unless wind shall first make an opening in the walls or roof of the building, and then only for such loss to the interior of the building, or insured property, caused immediately by rain entering the building through such openings.

The parties stipulated that the residence was damaged to the extent of $3,000.00; the warehouse $2,250.00; and the contents of the warehouse $1,250.00. The nature of the damage was fully explained. On the side of the residence nearest the water (the south) a terrace was completely destroyed; the wall separating the terrace from the living room was almost completely gone, exposing the interior of the house to the wind and rain; windows were broken out; the concrete block piers on the east side of the house were gone, causing the house to drop to the ground on the east side and to be lifted from the piers on the west while resting on center piers. Extensive structural damage resulted. Prior to the damage the floor of the house was seventeen feet above mean sea level. It appears from the evidence that the crest of waves at this point was seventeen feet above mean sea level. From water marks and debris it was determined that water reached a level in the living room four inches above the floor. There were also water marks on the walls in the bedroom on the East.

Two witnesses viewed the Morgan premises on the day before the full force of the hurricane hit and testified that the roof of the warehouse was seen upside down in one piece on the adjoining premises. Some of the sheet metal was gone from the walls and other pieces of metal were loose and flopped in the wind. The water had not risen to a point level with the floor of the warehouse, and so could not have reached the residence at that time. There was evidence of heavy rainfall in the vicinity, as well as several tornadoes, by eye witnesses. On the premises next to Morgan's a garage was completely destroyed while an adjoining small house was undamaged. A nearby tree was broken off about a foot from the ground. Trees were extensively damaged in the vicinity from ten to forty feet above the ground. The top was broken off a tree on Morgan's premises near the warehouse and a hollow tree near the residence

was broken off high above the high water mark.

■ The evidence clearly was sufficient to support the findings of the jury that the damage to the houses was solely caused by wind and rain entering through openings caused by wind. While water entered the residence and completely covered the site of the warehouse, the jury might well have concluded that the rain driven by hurricane force winds through open windows and doors would have completely soaked the interior of the residence and that the flood waters could have done no additional damage to the walls and floors. They might well have concluded from the evidence of the condition of the warehouse building prior to the time the water reached it, the force of the winds thereafter, and the location and condition of the sheet metal and heavy machinery after the storm, that the warehouse was completely destroyed by wind. In Hardware Dealers Mutual Fire Ins. Co. v. Smart, 10 Cir., 293 F.2d 558, the court said: " * * * The evidence is sufficient to present a question of fact for the jury as to whether the plaintiff's building was destroyed by wind alone, and the fact that a flood immediately followed does not, as a matter of law, prevent recovery on the policy."

It is clear that the machinery was subjected to heavy rains after the roof was removed from the warehouse. The principal damage to the machinery was caused by rust and corrosion due to water. Some electrical equipment was damaged by water. The smaller items were missing. Appellee attempted to establish the value of the missing items, but appellant objected that such evidence was irrelevant in view of the stipulation as to total damage, and this objection was sustained by the court. There was no direct or opinion testimony as to the relative likelihood of the rust or corrosion being caused by rainwater or flood water. Since the testimony is that this condition was caused by water and it was first exposed to rainwater, we cannot

say that the verdict of the jury is not supported by the evidence as to these items.

Among the items missing were such things as linens, chairs, tables, lanterns, electric heaters, nails, screws, wire, etc. There is nothing in the evidence to indicate that these and other items were not deposited in the water by the destruction of the building, and then carried away by the water currents or receding waters. While it might be argued that the loss was occasioned solely by the force of the winds, it could be argued with equal force that some or all of the items were deposited in the water.

■ It would seem that in any case where a house is totally destroyed by hurricane or windstorm, its contents will be damaged by water. Even though there is no rising water, the currents caused by the heavy rains would wash away some articles. If there were no water, it is probable that such articles would be blown away by the winds. Under such circumstances the loss is directly and proximately caused by the wind, and is covered by the policy. Niagara Fire Ins. Co. v. Muhle, 8 Cir., 208 F.2d 191; Pennsylvania Fire Ins. Co. v. Sikes, 197 Okl. 137, 168 P.2d 1016, 166 A.L.R. 375.

■ Appellant sought to introduce evidence to the effect that appellee's property had been in the path of a previous hurricane during which the winds were of approximately the same velocity, but which was not accompanied by flood waters, without significant injury. The trial court did not abuse his discretion in excluding this testimony. Missouri, Kansas & Texas R. Co. of Texas v. Bailey, 53 Tex.Civ.App. 295, 115 S.W. 601, error ref.; Tex.Jur.2d, Vol. 23, Evidence, Sec. 126.

■ Appellant requested the trial court to submit certain issues inquiring as to each item of property insured (1) whether damage was caused by the insured peril and (2) the percentage of damage so caused. Appellant is in no position to complain of

the manner of submission of this case. No objections to the court's charge are found in the transcript. The issues as submitted required the jury to determine whether the damage was caused solely by the insured peril. Under this form of submission appellee would have recovered nothing had the jury been of the opinion that any percentage of the damage was caused by a peril not covered by the policy of insurance. The form of submission favored appellant. The controlling issues were submitted. Carter v. Ferris, Tex.Civ.App., 93 S.W.2d 504, writ dism.; Lincoln County Mutual Fire Ins. Co. v. Smith, Tex.Civ.App., 232 S.W.2d 637, ref., n. r. e.

Affirmed.