SOUTHERN COTTON OIL COMPANY v. HENRY WALLACE.

Decided November 16, 1899.

1. **Master and Servant—Independent Contractor.**

Where an oil company engaged D. to bale cotton seed hulls with its machinery at so much per bale and exercised control over the manner in which he did the work or over the means by which it was done, and another person engaged by D. to assist him in the work was under the control and management of the company, D. was but an employe, not an independent contractor, and such other person was likewise the servant of the company by virtue of his employment by D.

2. **Same—Test.**

A test by which to determine whether one who renders service for another does so as a contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work and not the means by which it was accomplished.

### 3. Same—Evidence—Construction of Contract.

Where the contract of employment was verbal and it was not shown that it was either definite in its terms or thoroughly understood by the parties in so far as the employer's right of superintendence were affected by it, the acts of the parties may be looked to in ascertaining what construction of it in fact prevailed, and where the employer has assumed certain powers of control, assented to by the other party, he can not afterwards, on the question of construction, be heard to say that the powers so assumed were unlawful and unwarranted.

### 4. Practice—Special Issues—Charge.

In a case submitted to the jury upon special issues the court's failure to charge upon every phase of the case is not of itself reversible error, since the statute provides that on appeal an issue not submitted below and not requested by a party to the cause shall be deemed as found by the court in such manner as to support the judgment if there was evidence to sustain such finding. Rev. Stats., art. 1331, as amended by Act of June 18, 1897.

### 5. Same—Same.

In a case submitted upon special issues, where the general charge called for a special verdict, the court properly refused a request for a charge directing a general verdict for defendant if the jury found certain matters to be true.

### 6. Same—Categorical Answers.

Where a single issue is submitted in the form of several closely connected questions, a failure to require the jury to answer each and all the questions categorically is not error where the answer made covered the fact at issue.

### 7. Evidence—Opinion.

It was not error, as being matter of opinion, to permit a witness employed by the defendant company to state that he was foreman for defendant, although the contract of employment did not designate him as foreman.

### 8. Practice—Argument of Counsel.

Counsel have the right, in the argument of the case to the jury, to draw from the facts in evidence every legitimate influence deducible therefrom. See the opinion for illustration.

APPEAL from Harris. Tried below before Hon. JOHN G. TOD.

*Hutcheson, Campbell & Myer,* for appellant.

*Blake Dupree,* for appellee.

GILL, ASSOCIATE JUSTICE.—This is an appeal from a judgment in favor of appellee, Henry Wallace, against appellant, the Southern Cotton Oil Company, for damages for personal injuries.

The allegations in the petition are to the effect that appellee while in the employ of the company and engaged in the discharge of his duty undertook to press a bale of hulls in the company's hull press. That while so doing his hand was caught in the press and mashed off, leaving only the thumb. That the press was a dangerous piece of machinery, with the uses and dangers of which he was unfamiliar, and that he had been operating same only about two hours when the injury occurred. That he was at the time a minor about 17 years old, inexperienced and unaccustomed to the use of machinery, and that defendant knew of his inexperience, youth, and want of knowledge, and so knowing failed to apprise him of the dangers incident to the use of

the press, and failed to explain to him how to use it with safety. That the injury was the result of the negligence of the company in failing to so warn and advise him, and of their negligence in failing to properly light the building where and when the work was being done.

Appellant answered by general denial and plea of contributory negligence.

That appellee was injured as alleged is not controverted, and there was evidence to support the finding that appellee was not guilty of contributory negligence and that he was not advised of the nature of the machinery and of the danger of operating it. His age and inexperience were also made to appear.

Trial was had before a jury and the case was submitted to them upon special issues, at the request of appellant, and with the exception of one special charge given at the request of appellee, the entire charge as prepared and asked by appellant only was given, and it together with the answers of the jury is as follows:

"You are instructed to return your answers to the following questions submitted to you as you believe from the evidence the facts to be, and you will answer them in the order propounded:

"1. Was John Davis an independent contractor for the baling of hulls at the plant of the cotton oil company on the 2d day of December, 1892?"

Answer of the jury.—"He was not."

"2. Who employed the plaintiff Henry Wallace? That is, who hired him and who was responsible for his services?"

Answer.—"The Southern Cotton Oil Company."

"3. Who directed the labor of the plaintiff Henry Wallace, and who had the right to discharge him?"

Answer.—"The Southern Cotton Oil Company."

"4. If you believe Henry Wallace was injured while baling cotton seed hulls at the plant of the Southern Cotton Oil Company, were said injuries occasioned by any lack of diligence or attention on the part of said Wallace?"

Answer.—"No."

"5. If you find that Henry Wallace was injured by machinery of any kind, could he by the exercise of his sense of sight see and know that it was dangerous for him to place himself in the position he was when injured?"

Answer.—"No."

"6. Was Henry Wallace cautioned by anyone before he began work at baling cotton seed hulls as to the danger of his employment, and if so, by whom?"

Answer.—"No."

7. (Submits the question of amount of damages and the jury found $1800.)

"The above special issues are requested to be given to the jury by the

defendant, and upon their finding such judgment be rendered as the law and the facts may require." (Signed by appellant's attorneys.)

The jury also indorsed on the charge a general verdict for the plaintiff.

Appellant's first, sixth, seventh, and tenth assignments of error assail the judgment on the ground that appellee at the time of the injury was not in the employ of the oil company, but was in the employ of one John Davis, an independent contractor, and that the undisputed evidence was to this effect. The most serious and important question in the case is thus presented. The facts affecting this issue are substantially these:

At the time, and prior to the date of the injury, John Davis was baling hulls for the oil company, receiving for his compensation 3 cents per bale, out of which he was to pay such employes as he found it necessary to engage to assist him in the work. This arrangement was verbal, was for no specified time and for no specified number of bales, and the oil company could terminate it at any time. The work was done by the use of two hull presses situated in a shed adjacent to the company's oil mill, and the company owned both the presses and the premises on which they were situated. The presses were operated by steam which was furnished from the company's main boilers, which were connected with the presses by a steam pipe. The tools for the repair and adjustment of the presses remained in the possession of one Williams, the company's carpenter, and it was his duty to adjust it from time to time so as to make the bales of the proper weight and size. The company fixed the hours of work from 7 o'clock a. m. until 7 o'clock p. m., and required of Davis his entire time. He had no other employment. There were two shifts of men operating the presses, one in the daytime and one at night. The contract required that the bales should be of 100 pounds weight and of marketable shape, and subject to the inspection of an agent of the company who had the authority to accept or reject them. Sauer and Frye, the manager and superintendent of appellant's mill, and through whom the arrangement was made with Davis, gave him to understand that there were only two bosses at the mill, meaning Sauer and Frye, and that if Davis did not obey them they would get some one who would. Davis on one occasion undertook to discharge one of the persons employed to help him in the work of running the presses, but Frye commanded Davis to retain him and he did so. The employes of Davis were frequently required by the manager and superintendent to do other work about the mill, and Davis' protests were not noticed or regarded. Sauer had the power to discharge Davis at any time, and that would have the effect to discharge those working under him, and Davis was in fact discharged a short time after the accident. Davis was a negro, and pecuniarily irresponsible.

Appellee was hired by Davis and paid by him at the rate of $1.25 per day. His name was not on the company's pay rolls, and at the date of the accident neither Sauer nor Frye knew that he was working for Davis

or on the premises of the company. Either Sauer or Frye went into the press shed two or more times every day on their rounds in looking after the affairs of the company.

This case was before the Court of Civil Appeals on a former appeal, and the court, in an opinion by Justice Neill, declared Davis an independent contractor and held the company not liable. 38 S. W. Rep., 1137.

Upon writ of error to the Supreme Court, Justice Brown, for the court, discussed the evidence at some length, in connection with the law question involved, and held that the evidence was sufficient to require the submission of the question to a jury. We infer from the opinion that the facts upon that appeal were practically the same as here. The court declined, however, to intimate what weight should be given to the evidence upon another trial. 91 Texas, 18.

Whether this court should sustain a finding that Davis, under these facts, was not an independent contractor, is a question left to be determined. In the opinion just cited occurs the following language: "If, however, the oil company exercised control over the manner in which Davis was to do the work, or over the means by which it was to be done, or if the persons engaged in the work with Davis were under the control and management of the company, then Davis was but an employe, and Wallace was likewise the servant of the company by virtue of his employment by Davis.

"But if Davis was an independent contractor in the sense that the company had no right of control as to the manner in which the work was to be done, then he was not the servant of the company, and plaintiff can not recover."

These expressions, however, are but the reiteration of accepted general rules, and do not remove the difficulty of applying them as an ultimate test to the facts in this case. The rule laid down in Shearman & Redfield on Negligence, sections 76-79, is as follows: "The true test by which to determine whether one who renders service for another does so as contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work and not as to the means by which it is accomplished." This is approved in Cunningham v. Railway, 51 Texas, 509, and appears to be as sound and effective a test as any which have resulted from the many efforts to formulate an effective one. It seems to us, however, that many things must be considered in determining the question in cases like the one before us, which are not embraced in many of the definitions or prescribed tests.

The fact that the alleged servant never serves more than one person, and has no independent occupation, should be strongly persuasive that the relation of master and servant exists. This latter is a feature of the case before us, and if the additional facts be considered, that the machinery with which the work was done belonged to the company; that it was situated upon the company's premises; was controlled, adjusted, and maintained by the company; that the steam power with which it was

operated was furnished directly from appellant's main plant; that the company had command of Davis' entire time, fixing the hours of labor; that it prescribed the manner of baling and the weight and character of the bale; that the company's manager actually exercised control over the employes of Davis, and over Davis himself in the management of his men, it is difficult to escape the conclusion that Davis was but the employe of the company, his compensation being measured by the number of bales accepted at 3 cents per bale.

As suggested by Justice Brown in the opinion cited, another fact of some weight is the insolvency and irresponsible character of Davis. Not, as appellant intimates in his criticism of that expression, that it would debar him from assuming such a relation, but because the fact renders it extremely improbable that the company would entrust to such a person a continuing contract involving the operation of valuable machinery and the filling of important orders as a result of his work, without retaining control and management over the methods, means, and manner of the work, and the time when it should be done.

The case is not a clear one, but in the light of the authorities at our command we are of opinion that the finding of the jury that Davis was not an independent contractor is sustained by the evidence. Speed v. Railway, 71 Mo., 303. In this connection attention is called to the fact that one of the alleged causes of the injury in this case was the lateness of the hour and want of light, and the undisputed evidence is that the company retained and actually exercised the right to prescribe how long Davis and his employes should work.

To the contention of appellant that the various acts of authority and control exercised over Davis by the superior officers of the company were or may have been unlawful in the light of the contract with Davis, and in direct contravention of its terms, we reply, that might be true. But the contract was verbal and it is not shown by the evidence that it was either definite in its terms or thoroughly understood by the parties in so far as the company's right of control, superintendence, and interference were affected by it, and the acts of the parties may be looked to in ascertaining what construction of it in fact prevailed. The power of the company to terminate it at any time carried with it the power to alter it at any time with the consent or acquiescence of Davis. The fact that Davis had at first the possession and control of the tools for the repair and adjustment of the presses, and that these were afterwards taken from him and that duty reposed in Williams, the carpenter, would indicate that some alteration in the arrangement had been made, and that Davis, though protesting, had, by continuing the work, assented to the change.

The assertion of power on the part of the officers of the company to require the retention of men whom Davis desired to discharge; the putting of the men to other work; the fixing of the hours of labor, etc., were resisted by Davis, thus indicating that he did not so understand

the contract, but the contention of the officers prevailed under the threat of discharge, and Davis, whether willingly or not, must be held to have assented. This being true, the contract was after that clearly in accordance with the company's construction of its terms, and appellant can not now be heard to say that the powers assumed were unlawful.

Appellant's second, third, fourth, and fifth assignments of error complain of the court's failure to charge upon every phase of the case, and in not defining negligence, and not advising the jury what it took to constitute an independent contractor.

In disposing of these questions we call attention to the statutory provisions regulating the submission of cases upon special issues. Article 1331, Revised Statutes, as amended by the Act of June 18, 1897, provides, among other things, "But the failure of the court to submit any issue shall not be deemed a ground for reversal * * * unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal * * * an issue not submitted and not requested by a party to the cause shall be deemed as found by the court in such manner as to support the judgment, provided there be evidence to sustain such a finding."

In Cole v. Crawford, 69 Texas, 124, it is held that a general charge is not required where a cause is submitted on special issues. It is conceded, however, that if requested the court should give to the jury the rules and definitions applicable to the various issues and necessary for them to understand in order to render their verdict understandingly. The better way would doubtless be to furnish them with such instruction, whether requested or not.

In this case, however, the exact issues requested by appellant were submitted in the exact form in which they were tendered. If it was desired that the court should submit any other issues for their determination or more fully instruct them as to the law, such additional instructions should have been requested. The trial court could safely assume that appellant was satisfied with the manner of its submission, in view of the fact that the instructions requested and given were followed by a prayer for judgment upon such answers as the jury might make. Knight v. Railway, 41 Texas, 413.

The only other instruction asked by appellant, save a peremptory one to find for defendant, was one requiring the jury to return a general verdict for defendant "if they found that the danger was apparent, or that it would have been apparent to appellee had he exercised his senses," etc. The court's refusal to give this charge is assigned as error. We do not think, however, the assignment should be sustained. The charge directed the jury to render a general verdict when the general charge called for a special verdict, and the court had not the power to refuse to submit upon special issues when requested. The charge requested having called for a general verdict, was properly refused, not alone for the reason above given, but because questions numbers 4 and 5 as given embrace the matter asked, and were answered by the jury.

By the eleventh assignment of error appellant assails the action of the trial court in giving the special charge asked by plaintiff below, but the only proposition under this assignment presents as error simply the failure of the court to require of the jury categorical answers to each of the inquiries contained in the charge complained of. The charge is as follows: "In connection with question number 1, you will answer this question: Did the defendant exercise any authority over Davis in baling the cotton seed hulls, or did it direct how and when Davis should bale the hulls, or did it require Davis to press the bales subject to the satisfaction or the approval or the rejection of defendant's agents, Calhoun or Frye, or did the defendant have general control and general management of the press while Davis was baling hulls and Wallace was working at the press under John Davis? And if you find from the evidence that the defendant did so exercise such control or authority, then said Davis was not an independent contractor."

This charge as applied to the facts of this case appears to present the law correctly. The failure to require an answer to these as separate inquiries was not error, for the jury should not be required to find the evidence of the fact to be found, but the fact itself, and the answer to special issue number 1 covered this inquiry. Rev. Stats., art. 1331; Cole v. Crawford, 69 Texas, 124. The fact to be ascertained was whether Davis was an independent contractor or an employe of appellant, and this the jury found in answer to the first inquiry, and they were instructed to consider the special charge in connection therewith. If the defendant wished the rule more fully stated, or the converse of the proposition put, it should have pursued the course of the plaintiff and asked it in a proper way.

The witness Davis was permitted to state, over the objection of appellant, that he was "foreman for the defendant," and by the thirteenth assignment of error this action of the court is assailed on the ground that the answer was the opinion of the witness as to the very fact in issue.

We are of opinion that the evidence was properly admitted. If defendant was employed by the oil company in the capacity of foreman, it was a fact that he might know and state. If his answer was untrue, appellant might show its falsity by cross-examination, or in any other proper way.

In the twelfth assignment of error it is urged that the judgment should be reversed because counsel for appellee used in argument language to the effect that "defendant was seeking to hide behind Davis in this case," and then asserting that "shortly after the injury Sauer, for the oil company, sent for John Davis to come to his office, and demanded of John Davis to sign a written contract in which was the statement that Wallace, the appellee, was cautioned before he went to work at the press where he was injured, and that the oil company was not responsible for his injuries, and John Davis refused to sign said statement, and Sauer thereupon got mad and cursed him out;" the

objection being based upon the contention that no evidence was adduced showing that Davis had been required to sign a statement containing any such stipulation. Exception was reserved and overruled at the time. In addition to plaintiff's contention under the evidence generally that the company was seeking to escape liability through Davis, there was testimony to the following effect: Witness Davis stated that Sauer sent for him shortly after the accident, and Davis went to Sauer's office in regard to this case. Sauer admitted that he sent for Davis and tried to induce him to sign a statement, after talking to him about the case. That Davis refused to sign it and he, Sauer, got mad and cursed him out. The evidence does not disclose what the proposed statement contained, but it is shown that it was with reference to the case, and the inference is legitimate that its contents were designed to assist the company in its defense. The two points of principal contest being the issues of known danger and the question of the nature of Davis' employment, counsel might have fairly argued that it contained matters tending to establish both issues, in view of the attendant circumstances disclosed and the anger and conduct of Sauer, and we can not say that the assertion that it was prepared for the one purpose was such a far-fetched inference as to require the reversal of the case.

Recurring to the provisions of article 1331 of the Revised Statutes, as amended in 1897, we call attention to its provisions as authorizing the judgment which was rendered upon the verdict. When a special verdict does not find all the facts necessary to form the basis of a judgment, but does answer all the questions submitted, the court is presumed to have found from the evidence the omitted facts necessary to support the judgment if the evidence is present to authorize the finding thus presumed. We indulge such presumption in this case, it appearing that the evidence is sufficient to have authorized every finding necessary to support the judgment. It was the right of the appellant to ask the court for his additional conclusions of fact, but this was not done. Whether the injury was due to negligence on the part of appellee, or was the result of a risk assumed by him, are questions upon which, in the light of the evidence, the verdict and judgment are conclusive.

No reversible error being disclosed, the judgment is affirmed.

*Affirmed.*