SANGER v. FIRST NAT. BANK OF AMARILLO et al. (No. 648.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 24, 1914. On Motion for Rehearing, Nov. 14, 1914. On Second Motion for Rehearing, Nov. 28, 1914.)

1. APPEAL AND ERROR (§ 928*)—REVIEW—PRESUMPTIONS—INSTRUCTIONS.

Under Rev. St. 1911, art. 1973, as amended by Acts 33d Leg. c. 59 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1973), which requires requested instructions to be presented to the court and submitted to the opposing counsel, it is the duty of the court, and not of the party making the request, to submit them to the opposing counsel, and it will be presumed that the court performed its duty.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3749–3754; Dec. Dig. § 928.*]

2. BILLS AND NOTES (§ 132*)—OPERATION—COLLATERAL AGREEMENT — LIABILITY OF MAKER—"PLACED."

Defendant gave a note to B. in payment for 100 shares of the stock of a corporation; the certificate being issued to defendant. An agreement was made at that time by which the note should not be binding until the rest of the 250 shares subscribed for by B. was "placed" for the purpose of completing the plant. After the issuance of the stock plaintiff bank, with knowledge of the collateral agreement, advanced $4,500 to the corporation on the note. Part of the balance of the stock subscribed by B. was paid for in cash by different parties and issued to them, but a certificate for 20 shares of it

was issued in defendant's name, to which was attached another note signed by him for $2,000, and also payable to B., which note was delivered by B. to the corporation, and another certificate for five shares of stock was issued in the name of a subscriber thereto, with draft for the purchase price attached, which draft was never paid. Neither of these certificates was ever delivered. *Held*, that the certificates, not having been legally issued under Const. art. 12, § 6, forbidding the issuance of corporate stock except for money paid, labor done, or property received, could not be considered as having been "placed" within the meaning of defendant's agreement, so that his note was not binding as to the plaintiff bank or as to other parties which had knowledge of the collateral agreement.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 316–324; Dec. Dig. § 132.*

For other definitions, see Words and Phrases, First and Second Series, Place.]

3. APPEAL AND ERROR (§ 934*) — PRESUMPTIONS—STATUTES.

The presumption created by Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, that, where special issues are submitted, the failure to submit a particular issue does not require a reversal, but it will be presumed that the court found on such issue the facts necessary to support the judgment, does not apply where the pleadings of the successful party do not contain allegations which are necessary to support the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781, 3782; Dec. Dig. § 934.*]

4. TRIAL (§ 215*)—INSTRUCTIONS—NECESSITY—SUBMISSION OF SPECIAL ISSUES.

Even where a case is submitted on special issues, the court, if requested, should charge with reference to the rules of law applicable to such issues, including a charge on the burden of proof.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 481; Dec. Dig. § 215.*]

5. JUDGMENT (§ 243*) — PARTIES — DISMISSAL AS TO ONE PARTY.

Where the original defendant asked to have others made defendants, and all of the parties appeared and answered except one, who was not a necessary party, and thereafter defendant's motion to dismiss as to the party not answering was granted, it was error to render judgment for that party.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 428; Dec. Dig. § 243.*]

On Motion for Rehearing.

6. APPEAL AND ERROR (§ 253*)—PRESENTING QUESTIONS IN LOWER COURT—EXCEPTIONS TO PLEADINGS.

Plaintiff cannot on appeal complain that the answer of defendant did not state the legal effect of the contract relied on, where no special exception was taken to the answer on that account.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1485, 1488, 1491–1493; Dec. Dig. § 253.*]

7. PLEADING (§ 34*)—CONSTRUCTION—REVIEW—CONCLUSION.

An allegation of a legal conclusion that the condition upon which defendant's liability depended had been performed need not be considered on appeal, even though it was alleged to be upon information from the defendant.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 5½, 66–74; Dec. Dig. § 34.*]

8. APPEAL AND ERROR (§ 1122*)—DISPOSITION OF CAUSE—FINDINGS—IMMATERIAL MATTERS —PLEADINGS.

Where plaintiff's supplementary petition contained a general demurrer to defendant's answer, to the overruling of which plaintiff excepted, the opinion of the Court of Civil Appeals, on appeal by the defendant from a judgment against him, where no cross-appeal was taken by plaintiff, need not state that the demurrer was filed and overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4420; Dec. Dig. § 1122.*]

9. APPEAL AND ERROR (§ 664*)—CONFLICT IN RECORD—RECITALS.

A recital in a judgment dismissing one who had been made defendant that such defendant had filed no answer is conclusive against the file mark on a paper in the record purporting to be the answer of such defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2856–2859; Dec. Dig. § 664.*]

10. EXCEPTIONS, BILL OF (§ 19*)—SUFFICIENCY—REFUSAL OF REQUESTED CHARGES.

Under Rev. St. 1911, art. 2059, providing that no particular form is necessary in a bill of exceptions, but the objection shall be stated with so much evidence as may be necessary to explain it, and no more, a bill of exceptions which refers to a charge requested by the defendant by number, which request was marked "Refused" by the trial judge and filed with the clerk, so as to become a part of the record under Vernon's Sayles' Ann. Civ. St. 1914, art. 1974, is sufficient, since documents in the record need not be copied in the bill of exceptions provided there is a sufficient reference in the bill to identify them.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 20; Dec. Dig. § 19.*]

11. APPEAL AND ERROR (§ 839*) — DISPOSITION OF CASE—CONCLUSIONS OF LAW—RULINGS ON SPECIFIC ASSIGNMENTS.

The Court of Civil Appeals is not required to rule specifically on each assignment of error, especially where the appellant makes no request for such rulings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2915, 3278, 3279, 3280, 3286–3288, 3290–3293, 3297–3300, 3377; Dec. Dig. § 839.*]

On Second Motion for Rehearing.

12. APPEAL AND ERROR (§ 833*)—REHEARING —IRRELEVANT AND IMPERTINENT MATTER.

A motion for rehearing containing irrelevant and impertinent matter may be stricken from the files.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3214, 3229–3240, 3244–3246; Dec. Dig. § 833.*]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Action by the First National Bank of Amarillo against Charles W. Sanger, in which the National Bank of Commerce and others were made parties defendant, at the request of the defendant Sanger. Judgment against the defendant Sanger in favor of the plaintiff and the other defendants, and defendant Sanger appeals. Reversed and remanded, motion for rehearing denied, and second motion for rehearing stricken from the files.

W. Boyce, of Amarillo, for appellant. Madden, Trulove & Kimbrough, Crudgington & Works, and Synnott & Underwood, all of Amarillo, for appellees.

HALL, J. The First National Bank of Amarillo brought this suit against Charles W. Sanger, declaring on a note for $10,000, dated January 15, 1910, alleged to have been payable to O. W. Butt, and that its payment was secured by 100 shares of stock in the Panhandle Packing Company, issued to Charles W. Sanger, and attached to said note as collateral. By his answer defendant Sanger made the National Bank of Commerce, H. B. Sanborn, Amarillo Bank & Trust Company, Will A. Miller, Jr., J. W. Crudgington, M. C. Nobles, and the Amarillo Improvement Company parties defendant, and alleged that said $10,000 note was given to O. W. Butt for 100 shares in the Panhandle Packing Company which the said Sanger was purchasing from Butt; that the said Butt had subscribed for $25,000 of stock in said Panhandle Packing Company; and that contemporaneously with the execution of said note another instrument in writing was executed and signed by the said Butt, whereby it was provided that the said $10,000 note should not become binding or effective until the remainder of said $25,000 of stock subscribed for by the said Butt had been "placed for the purpose of completing the plant." He further answered that, contemporaneously with the execution of said note, the said defendant Sanger agreed to purchase of the said Butt 100 shares of stock in the Panhandle Packing Company, and was to pay for the same by the execution and delivery of said note; that, as part of the consideration for such sale, the said Butt agreed to guarantee that the said stock should at all times while owned by the said Sanger be worth par, and should produce at all times a profit of not less than 10 per cent., and, when sold, should net the said Sanger $10,000, with interest at the rate of 10 per cent. per annum thereon from date of said note, and that the said Butt would deposit 450 shares of stock owned by him in the Panhandle Packing Company to secure the performance of said agreement; that according to the agreement of the parties the guaranty contract was to be executed in writing contemporaneously with the delivery of said notes; that while the papers were being prepared embodying said agreement in writing, the said Sanger was compelled to leave Amarillo suddenly; that the said note was prepared and signed by the said Sanger and delivered with the express understanding and agreement that the instrument embodying the guaranty contract should be immediately prepared by S. H. Madden, signed by the said Butt, and should form a part of the contract between said parties; that said guaranty contract was prepared by the said Madden, in accord-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ance with such agreement, but the said Butt repudiated the same, and refused to sign it, and has wholly repudiated and denied any liability by reason of said agreement; that the said Butt failed to place said 450 shares of stock in escrow, and said stock is of no value, and has never produced any profit or dividend; that the consideration for the execution of said note has wholly failed, and that plaintiff bank took said note with notice of the facts above recited. By its supplemental petition plaintiff denied that the condition named in the memorandum executed by Butt, with reference to placing his $25,000 of stock, had not been performed, and alleged that defendant Sanger and Butt both represented to plaintiff that the said condition had been performed at and before the delivery of said note to plaintiff; that the plaintiff, in consideration thereof, advanced to the said Butt the sum of $4,500, and the National Bank of Commerce advanced the sum of $2,500; that Will A. Miller, Jr., the Amarillo Improvement Company, and H. B. Sanborn each advanced $1,000, all of which advances were made to enable the said Butt to pay out and obtain 100 shares of stock issued to the said Sanger and attached to said note, and that the defendant Sanger, by reason of such representations, was estopped to deny liability on said note. Plaintiff denied that it had any notice of the alleged guaranty contract between Butt and Sanger until after the institution of this suit. The defendants National Bank of Commerce, Will A. Miller, Jr., Western Stockyards Company, M. C. Nobles, J. W. Crudgington, and Mrs. Ellen M. Sanborn (as the community survivor of H. B. Sanborn), who had been made defendants by Charles W. Sanger, by way of cross-action and reconvention against the said Sanger, alleged that each of them, except the National Bank of Commerce, had executed and delivered to O. W. Butt an accommodation note, each for the sum of $1,000, to enable the said Butt, by use of the said Sanger note as collateral security to the notes executed by said parties, to secure money with which to put in operation the packing plant, and that the defendant the National Bank of Commerce, relying upon the securities aforesaid, advanced to the said Butt $2,500; that the said defendants Miller and Sanborn had subsequently paid the notes of $1,000 each executed by them; that the notes executed by the Western Stockyards Company, M. C. Nobles, and J. W. Crudgington are still held by the plaintiff bank; that said parties, in executing said notes, relied on the security of said $10,000 note executed by Sanger, and had no notice of any agreement or conditions attached to the execution and delivery of said $10,000 note as pleaded by the defendant Sanger. Upon the trial Sanger dismissed as to the defendants interpleaded by him, but the court permitted the defendants National Bank of Commerce, Will A. Miller, Jr., Western Stockyards Company, Ellen M. Sanborn,

J. W. Crudgington, and M. C. Nobles to remain in the case, because each filed an answer; but the defendants Amarillo Improvement Company and Amarillo Bank & Trust Company, having filed no answer, were dismissed. It was shown upon the trial that O. W. Butt had subscribed for $75,000 of the stock of the packing company; that he had paid $50,000 of this amount in machinery and services; and that the remaining $25,000 of his subscription was to be paid in cash. Not having the cash necessary to make this payment, Butt was making an effort to sell this $25,000 of stock so that it might be issued by the company and the plant completed. Certain citizens of Amarillo, including the appellants codefendants in this case, being interested in seeing the packing plant completed and put in operation, were induced to aid the said Butt in his efforts to dispose of said stock. Defendant Sanger, as has been stated, agreed to take 100 shares of this stock, for which the $10,000 note sued upon was executed. Negotiations between them having reached this stage on January 15th, Sanger received a telegram that his wife was sick in California, and left on the evening train, an effort being made to close the transaction before train time. Late in the afternoon of that day a meeting was had at the First National Bank of Amarillo between O. W. Butt, Charles W. Sanger, and W. H. Fuqua, president of the First National Bank, during which meeting the said note was executed and delivered to Fuqua, and the following agreement was also dictated, and either at that time or subsequently, signed by Butt:

"The First National Bank.
"Amarillo, Texas, Jan. 15, 1910.

"This memorandum is to witness that I have this day received of Charles W. Sanger one note for $10,000, which note is now being held by W. H. Fuqua, pending the issue of '100 shares of stock in the Panhandle Packing Company of Amarillo, Texas, which is to be issued to Mr. Charles W. Sanger, the executor of this note; and when said stock is issued to him and attached to this note, then it becomes the property of Mr. O. W. Butt, which he desired to use in the way of collateral with his stocks, for the purpose of procuring money from the banks or elsewhere, for the finishing of the packing plant. This obligation is not to become effective or binding until the remainder of my stock is placed for the purpose of completing the plant, aggregating $25,000.
"[Signed] O. W. Butt."

On the same evening Butt and Sanger applied to Attorney S. H. Madden, for the purpose of having the guaranty contract prepared. The purpose of making the accommodation notes for $1,000 each, by defendants Miller and others, was to aid Butt to procure the $10,000 upon the Sanger note from the banks of Amarillo. It further appears that after Sanger left on January 17, 1910, a meeting composed of W. H. Fuqua, O. W. Butt, J. W. Crudgington, Will A. Miller, Jr., M. C. Nobles, J. L. Smith, the president of the National Bank of Commerce, and perhaps others, was had, at which meeting

the whole arrangement for the loan of $10,000 upon the Sanger note and upon the accommodation notes was explained. Fuqua said nothing at this meeting about any collateral guaranty concerning the $10,000 note, and there is no evidence that any of the parties except Fuqua had actual knowledge thereof, but it was agreed at that time that the First National Bank on this security would advance $4,500, and the National Bank of Commerce $2,500. The Amarillo Bank & Trust Company agreed to buy outright three of the accommodation notes, but refused to participate in the collateral agreement. The $25,000 of stock subscribed for by Butt and referred to in the memorandum accompanying the $10,000 note was placed as follows: $500 sold to Mrs. Adair, for cash, stock being issued December 3, 1909; $1,000 sold to Mr. Bugbee for cash, time of its issuance not appearing from the record; the balance of $25,000 of stock was made out in certificates on January 17, 1910, but was not delivered until about the 28th or 29th of January. Of this $10,000 was issued to Sanger and paid for in cash, being the money obtained by Butt from the banks on Sanger's note and the accommodation notes above referred to. Another $10,000 of the stock was issued to O. W. Butt on January 28th, and paid for by his note for that amount, made payable to the Panhandle Packing Company, and indorsed by the Western Stockyards Company and Al Popham. This note was afterwards taken as cash by the creditors of the packing company and subsequently paid by the stockyards company and Popham. Of the $25,000 of stock, $2,000 was issued to Butt and paid for by him by a note for that amount, signed by Charles W. Sanger, but the stock was never delivered to either Sanger or Butt; $500 of the stock was issued to S. H. Madden on January 29th, and paid for in cash; another $500 of stock was issued to W. B. Slaughter on January 29th. This certificate was attached to a draft on W. B. Slaughter, but the draft was never paid. Upon its return Butt gave his note to the company for $500, which was held by the company, together with the stock, but the certificate of stock has never been delivered to any one. It was shown that W. H. Fuqua, the president of the First National Bank, was a director in the Panhandle Packing Company, and had knowledge of the manner in which the stock was issued and how it had been paid for. At the time the $2,000 note above mentioned was executed by Sanger to Butt, an agreement was dictated with reference to the same; Sanger testifying that the agreement was prepared after he left, while Fuqua testifies that it was prepared and signed beforehand. The court submitted the case on special issues, which together with the findings of the jury thereon are as follows:

"First. Was the remainder of the O. W. Butt $25,000 stock in the Panhandle Packing Company placed within the meaning and contemplation of the parties Fuqua and Sanger, at or before the time the three banks placed the $10,000 to the credit of said packing company, about January 27 to 29, 1910? Let your answer be 'Yes' or 'No.'" To which the jury answered: "Yes."

"Second. Did the defendant Sanger and Fuqua, president of the plaintiff bank, after the transaction of January 15, 1910, treat the remainder of the $25,000 stock of O. W. Butt in the Panhandle Packing Company as placed within the meaning of the memorandum of January 15, 1910, signed by O. W. Butt, relating to the $10,000 note of Sanger, introduced in evidence before you? Let your answer be 'Yes' or 'No.'" To which the jury answered: "No."

"Third. Did the defendant Sanger and O. W. Butt, or either of them, in the presence of and without objection by the other, represent to W. H. Fuqua that the execution of the $2,000 note by Sanger and the memorandum of O. W. Butt, referring to the same, dated January 15, 1910, read in evidence before you, conclude the placing of the remainder of the O. W. Butt $25,000 of stock, and did the said Fuqua rely upon such representation, and cause the plaintiff bank to accept the said Sanger's $10,000 note and advance to O. W. Butt the $4,500, by placing the same to the credit of the Panhandle Packing Company on its books, and afterwards paid out the same on the checks of the said packing company? Let your answer be 'Yes' or 'No.'" To which the jury answered: "No."

"Fourth. Did the defendant Sanger and O. W. Butt, on or about January 15, 1910, make a complete and final oral contract, agreeing upon all of the terms of the same, with reference to Butt guaranteeing Sanger's stock, leaving nothing to be done but to reduce it to writing; or did they only come to an understanding and give to the attorney, S. H. Madden, general instructions for drawing the contract, leaving him to state the details, with the intention that no complete and binding contract should be made until the instrument was drawn and submitted to both of them for their acceptance or rejection? Let your answer be, 'They made complete oral contract,' or 'They waited for the written instrument to complete the contract.'" To which the jury answered: "They made complete oral contract."

"Fifth. Did the plaintiff bank have knowledge or notice of the existence of said guaranty agreement, if any, between Sanger and Butt, at or before January 29, 1910? Answer 'Yes' or 'No.'" To which the jury answered: "Yes."

"Sixth. Did Will A. Miller, Jr., J. W. Crudgington, H. B. Sanborn, M. C. Nobles, and the Western Stockyards Company, or any of them, have knowledge or notice of the alleged agreement and contract between O. W. Butt and defendant Sanger, by which the payment of said Sanger's $10,000 note might or could be avoided before or at the time they executed their respective accommodation notes offered in evidence before you? If all had notice, let your answer be, 'Yes;' if all were without notice, let your answer be, 'No.' If only a part had notice and others did not, then answer, naming the ones having notice and the ones without notice." To which the jury answered: "No."

"Seventh. Did the National Bank of Commerce have knowledge or notice of the alleged agreement and contract between Butt and Sanger, by which the payment of said Sanger's $10,000 note might or could be avoided at or before the 29th day of January, 1910? Let your answer be 'Yes' or 'No.'" To which the jury answered: "No."

The court did not give in charge to the jury the law with reference to any of the issues.

[1] Appellee objects to the consideration of all assignments based upon the refusal of the trial court to give special charges requested by appellant, upon the ground that the record does not show that these special charges were submitted to opposing counsel. Each of the special charges has written upon the bottom of it by the trial judge, the following:

"Presented and refused before the main charge was read to the jury."

Each of the separate bills of exception taken to the action of the court in refusing the special charges have also the following notation by the district judge:

"The foregoing exception was taken at the time of the refusal of the said special instruction and before the delivery of the charge to the jury, and was overruled by the court, to which the defendant Sanger then and there in open court excepted."

We do not understand article 1973 R. S., as amended by Acts 1913, p. 113, to require that the party requesting the special instruction should submit it to opposing counsel, but we think that duty rests upon the trial judge. Such is the practice as to bills of exception. Vernon's Sayles' Civ. Stat. arts. 2063, 2064. This record shows that each of the special charges were presented to him, and we should presume that he has performed his duty and submitted it to opposing counsel. This holding is not in conflict with the holding of this court in the case of Gulf, T. & W. Ry. v. Culver, 168 S. W. 514; for in that case the bill of exception did not show it had been presented to the judge. The objection of appellant to the various assignments, based upon the action of the court in refusing the special charges, are all overruled.

[2] By several assignments of error appellant contends because all of the stock to which Butt had subscribed had not been issued by the packing company and paid for, as required by article 12, § 6, of the Constitution of this state; that the stock had not been "placed" in accordance with law. We find this the difficult question in the case. The memoranda of January 15, 1910, provides that the note is not to become effective or binding until the remainder of the $25,000 of stock, to which Butt had subscribed, was "placed." The contention of appellant is that the answer of the jury to the first special issue, which is, in effect, that the stock had been "placed" within the meaning and contemplation of the parties, does not meet the law's requirements, and is immaterial. He insists that the stock must be placed in accordance with the constitutional requirement, regardless of whether it had been placed within the meaning and contemplation of Sanger, Butt, and Fuqua. It is said in Bailey v. Joy, 132 Mass. 358:

"The plaintiffs contend that the mortgages were 'placed,' within the meaning of the orders, when they were recorded, or at least when they were transferred, and that the defendant then became liable to a full amount of the mortgages. But it seems clear to us that this is not what the parties intended. If the orders had been to pay the plaintiffs' bills when the mortgages 'are placed,' with nothing more, it might have presented a more difficult question; but the added words 'and from the amounts realized from said mortgages above the amount due George L. Joy for land and advances' point very strongly to the conclusion that by 'placed' the parties meant 'sold' or 'realized.' Construing the words 'are placed,' in connection with the context, and also with the contract between Joy and Tenney, to which the orders refer, it is clear that such was the meaning and intention of the parties."

We think the rule announced is applicable here. The memorandum of January 15, 1910, states that Butt desires to use the note with the stock attached in the way of collateral, for the purpose of procuring money from the banks or elsewhere, for the finishing of the packing plant. We must construe this instrument in the light of the surrounding circumstances, which appear from the record to have been known to all parties to the memorandum. Butt had subscribed for $25,000 of the stock of the packing plant and was unable to pay any part of it. It became necessary for him to procure other parties who would take and pay for the stock. Under the law, this could only be done by "money paid, labor done, or property actually received." Mason v. First National Bank of Paint Rock, 156 S. W. 366.

It appears that many of the citizens of Amarillo, including the parties to this suit, were interested in procuring the money necessary to complete the packing plant and put it in operation, and, as expressed in the written memorandum, it was especially the desire of Sanger and Butt. Of course, if the stock had already been acquired and paid for by Butt, it might be contended that the word "placed" had the meaning given it by appellee; but before it could be placed it must be paid for and the certificate of stock issued by the company; and this was the very thing Butt was endeavoring to have done. It appears from the record that the $2,000 note executed by Sanger to Butt had been delivered to the company; the certificates of stock had been issued and pinned to the note, but they had not been delivered to any one. It further appears that when the draft for $500 was made upon W. B. Slaughter, with the certificates of stock attached, and he had declined to honor the draft, Butt made his note and delivered it to the company in lieu of the draft, and in payment for the stock. This is clearly contrary to the law as announced in this state, and, under this state of facts, we can but conclude that at least $2,500 of the stock to which Butt had subscribed had not been placed when this suit was filed, and, as we gather from the record, cannot now be sold, since the plant has been sold under mortgages, and the com-·

pany is insolvent. They must be held to have contracted with reference to existing rules of law. If, upon another trial, the evidence is the same upon this issue, the court should direct a verdict in favor of Sanger as against all of the appellees having notice of the memorandum of January 15, 1910.

[3] Several of the makers of the $1,000 notes testified that they had no actual notice of the memorandum. Appellant contends that Fuqua was the agent of all parties in taking and holding the note and memorandum, and that notice to him is notice to all. These issues were not submitted to the jury, and under article 1985, Vernon's Sayles' Civil Statutes, we should presume they were found in such manner as to support the judgment; that is, we should presume that the makers of the $1,000 collateral notes had no notice of the memorandum and affirm the judgment as to them. But reference to their pleadings show no allegations of fraud or deceit or other grounds which would support the judgment in their favor against Sanger. Such being the state of the record, the judgment must be reversed, and the cause remanded.

[4] Appellant asked the court to give several special charges, including one upon the burden of proof and the law with reference to the sale of corporate stock. Even if a case is submitted upon special issues, the court, if requested, should charge the jury with reference to the rules of law applicable to such issues, including a charge on the burden of proof. Texas Baptist University et al. v. Patton et al., 145 S. W. 1063; Southern Cotton Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638; Cole v. Crawford, 69 Tex. 124, 5 S. W. 646.

[5] The Amarillo Improvement Company is not a necessary party to the suit, and, having been dismissed by order duly entered, no judgment should have been rendered in its favor.

Several other matters are presented in appellant's brief which will probably not arise upon another trial, and will not be considered. Appellee insists that the obligation referred to in the memorandum of January 15, 1910, in that part of the instrument where it is said, "This obligation is not to become effective or binding until the remainder of my stock is placed," etc., has no reference whatever to the $10,000 note, but refers to the undertaking on the part of Butt to raise $10,000 to take out 100 shares of the stock in the packing company, in the name of Sanger, and then use the note with his other stocks to raise the money for finishing the packing plant. This theory has not been advanced in the pleadings, and no witness has testified to that effect; in fact, all the testimony in the record tends to show that the reference in the paragraph of the memorandum referred to is to the note, and it appears from the evidence of the parties to the memorandum that they so considered it.

Reversed and remanded.

HENDRICKS, J., not sitting.

On Motion for Rehearing.

HALL, J. Many things in the briefs, reply briefs, written arguments and motion for rehearing in this case are objectionable, and this is especially true as to the appellees. Rule 48, Court of Civil Appeals (142 S. W. xv), provides that arguments in this court must avoid "any reference or comment upon positions taken in the trial court or other extraneous matters not involved in or pertaining to that which is found in the record." This is now, and has ever been, the rule of practice in the trial courts. The rule is one of fairness, and its foundation is in the principles of justice and honesty. Comment upon matters not within the issues and not sustained by the record, appeals to sympathy or prejudice; the use of abusive language, statements as to what facts can be established, spiteful remarks, whether true or untrue, concerning opposing counsel and others connected with the case, should never be tolerated in any court. This court is not concerned about the personality or nationality of any litigant, attorney, juror, or witness connected with the controversy. Furthermore we will not be terrified or driven from what we conceive to be our duty by unjust criticism and misrepresentation of the opinion, and by fulmination and bluster as to what "will ultimately be held as the law of this case." We have declared what we conscientiously thought is the law governing the case, with no disrespect to the opinion of counsel to the contrary, and uninfluenced by any improper matter injected into the controversy. Unless appellant's name indicates that he is an "astute son of Jacob," there is not a syllable in the record on which to base such statement. But, suppose he is, does that fact alter rules of law? The charge made for the first time in this court that another "Hebrew" qualified as a juror "simply to serve the appellant and vent his spleen against" one of the litigants is a serious and uncalled for attack upon the integrity of the juror, charging him with crime and is without an atom of support in the record. Such procedure is rarely ever resorted to by reputable lawyers and cannot be defended upon any ground. These and several other matters of a like character which have crept into the case deserve censure. We desire to make our meaning clear at least upon this point and not treat the matter "cavalierly," since a repetition of it may result in having the guilty party's brief stricken from the files, with the consequences which follow such an order.

[6] The first ground set up in appellees' motion for rehearing is that we erred in our

statement of the pleadings in the case, in stating that the appellant, Sanger, pleaded that contemporaneously with the execution of the note sued upon another instrument in writing was executed and signed by Butt, "whereby it was provided that said $10,000 note should not become binding or effective until the remainder of said $25,000 of stock subscribed for by said Butt had been placed for the purpose of completing the plant." Appellees do not clearly and fairly state either the purport or substance of appellant's pleading upon this point. Subdivision 3 of the answer contains the following allegations with reference to the agreement of January 15th, referred to:

"(1) For special answer herein this defendant shows that, contemporaneous with the execution of the note sued upon and forming a part thereof, the said O. W. Butt executed and attached to said note, as a part thereof, an agreement in writing duly signed and executed by him, a copy of which said agreement is attached hereto, marked Exhibit A, and made a part hereof.

"(2) Now this defendant says that the condition mentioned in said agreement upon which said note was to become a binding and effective obligation—to wit, placing of the remainder of the $25,000 of stock of the said O. W. Butt in the Panhandle Packing Company—has never been performed, and that all of such additional $25,000 of stock has never been placed; that in consequence thereof said instrument is of no force and effect whatever.

"(3) * * * The stock referred to in the concluding clause of the agreement attached, was a part of the stock which the said O. W. Butt had so agreed to take in said corporation.

"(4) That the plaintiff took said note with the full knowledge of the fact of the execution of said contract and failure of the condition upon which said note is given, and is not entitled to collect anything by reason thereof."

A copy of the agreement was attached to the petition as an exhibit; yet appellees state in their motion that the answer does not state the contents thereof, either by quoting its language or by stating its legal effect. If the above quoted allegations do not state its legal effect, appellees cannot complain because no special exception was urged to the answer on that account. The statement that its language is not quoted may be true, but an exact copy of the instrument is attached to the pleading, and, in effect, there is no difference. Appellees further say:

"The error of the court in said statement is material, because it is the settled law of the state that a written instrument cannot be pleaded so as to get the benefit thereof by merely referring to it and attaching a copy of it as an exhibit."

As an abstract principle of law, this is correct, but such is not the case here. The pleading was sufficient, and certainly so in the absence of a special exception. Whether it was or not, appellees have waived it by not excepting in the trial court and properly bringing it here for review. It is too late to raise the question of the sufficiency of the pleading now, and we think that our statement with reference to the matter is correct, and this ground is overruled.

[7] The second ground of the motion is that this court erred in its statement of the First National Bank's supplemental petition in saying appellee alleged that defendants Sanger and Butt both represented to plaintiff "that said condition had been performed at and before the delivery of said note to plaintiff," and failed to state that said supplemental petition in that connection further alleged upon information and belief "that same had been so placed on and said condition performed at and before the delivery of said note to plaintiff." The allegation which appellees assert we erred in omitting is merely the statement of a legal conclusion. It should not have been in the supplemental petition, and, if excepted to, it would have been the duty of the trial court to have sustained the exception. The vice in stating a legal conclusion in a pleading is not relieved by stating it upon information and belief, no matter from whom the information was obtained, nor upon whose belief it is made.

[8] The third ground is that we erred in the statement of the case in failing to state that plaintiff, in its supplemental petition, interposed a general demurrer to the allegations contained in the first amended original answer, and that the demurrer was overruled and plaintiff excepted. No reason is shown why we should include that statement. Appellees have filed no cross-assignments based upon the action of the court; neither do they suggest fundamental error. It is our duty to state all matters, both of pleading and fact, upon which the decision of a case should rest, but proceedings in matters wholly immaterial and upon which the rights of the parties can in no way depend would be surplusage, and would have the effect of lengthening the opinion to no good end.

[9] The fourth and fifth grounds are predicated upon the fact that we stated the Amarillo Improvement Company had filed no answer. It is asserted that the transcript shows an answer filed on March 31, 1913, on behalf of the Amarillo Improvement Company. This is admitted, but the transcript also contains a judgment of the court dismissing the cross-action of appellant, Sanger, against certain of the defendants in his cross-action, and contains this recital:

"Said cross-action of the defendant Charles W. Sanger be and the same is hereby dismissed as to said above-named defendants, without prejudice, however, to the cross-actions filed herein by each of said defendants, except the defendant Amarillo Improvement Company, which has not filed any cross-action, and that said Amarillo Improvement Company go hence without day and recover all its costs," etc.

This order was entered November 3, 1913, and we must presume that the answer filed on March 31, 1913, had been withdrawn. We are not called upon to explain the date of the file mark on it nor how it found its way into the record of this case. If, by their negligence, appellees have permitted an order entered upon a motion to dismiss to recite the fact that the Amarillo Improvement Com-

pany had filed no cause of action, they are bound by the recital. The statute required them to take notice of the filing of the motion and the order entered disposing of it. If the recital is not true, it was their duty to have it corrected in the trial court. Where a conflict occurs in the record between a judgment of which they must be held to have notice, and the file mark on a pleading copied into the record, the recital in the judgment is conclusive. Hixon v. Weaver, 9 Ark. 133; Graves v. Cameron, 14 S. W. 59; Bridgens v. West, 35 Tex. Civ. App. 277, 80 S. W. 419; Parish v. Alston, 65 Tex. 197; Tammen v. Schaffer, 45 Tex. Civ. App. 522, 101 S. W. 468.

[10] In the sixth paragraph of the motion it is insisted that the record fails to show any bill of exception properly bringing up for review the ruling of the trial court in refusing special charges requested by appellant. The record with reference to this matter is as follows: Taking the refusal of the third special charge as a fair instance, we find a special charge duly signed by appellant's attorney, upon which the district judge made the following notation:

"Presented and refused before the main charge was read to the jury."

This is dated November 6, 1913. Upon the same date we find a bill of exception, which, omitting the formal parts, is as follows:

"The defendant C. W. Sanger excepts to the action of the court in refusing to give in charge to the jury special charge No. 3, requested by this defendant, for the reason that in the charge as given to the jury it is left without any instruction as to the laws governing a corporation in the issuance of stock and payment therefor, and under the facts in the case it is necessary and proper for the court to instruct the jury with reference to such law. W. Boyce, Attorney for Defendant Sanger."

"Foregoing exception was taken at the time of the refusal of the special instruction and before the delivery of the charge to the jury, and was overruled by the court, to which the defendant Sanger then and there in open court excepted. James N. Browning, District Judge."

Article 2059 of the Revised Civil Statutes is:

"No particular form of words shall be required in a bill of exceptions; but the objection to the ruling or action of the court shall be stated with such circumstances, or so much of the evidence as may be necessary to explain it, and no more, and the whole as briefly as possible."

It is provided in article 1974, Vernon's Sayles' Civil Statutes, that when instructions are asked, and some of them are refused, the judge shall note distinctly which of them he has given and which he refused, and shall subscribe his name thereto, and such instructions shall be filed with the clerk, and shall constitute a part of the record of the case, subject to revision for error. Rule 45 for the district and county courts provides that the charges of the court that are given and those asked that are refused, when signed by the judge and filed by the clerk, being made thereby a part of the record by statute, should not in civil cases be made a part of

a bill of exceptions. Appellees assert that there are no bills of exception in the record bringing up any of the special charges, and that, while the exceptions are brought up sufficiently under the old practice, it could not be contended for a moment that the matter is sufficiently presented under the new statute. It is further asserted that, after the trial judge had refused the special charges filed, counsel for appellant appeared to have gone back to the trial judge and induced him to sign a further memorandum referring to each of the special charges. There is nothing in the record from which any such conclusion can be drawn. It has been frequently held that documents need not be copied in the bills of exceptions, provided there is a sufficient reference in the bill by which the document contained in the record may be identified. Taylor v. Davis, 13 S. W. 642; Wilborn v. Elmendorf, 40 S. W. 1059. Under the rule announced in these and other cases, the special charge as it appears in the transcript is fully identified and referred to in the bills of exception, which seems to have been signed and filed on the same day. Under article 2059, supra, no particular form of words is required to constitute a bill of exception. Under article 1974 it was not necessary for the judge to order the bill filed as part of the record. That article of the statute requires the clerk to file it, and, when so filed, it is by force of the statute made a part of the record; neither is it a memorandum outside of the record, as contended by appellees. Appellees also assert that the memorandum was not taken at the time the special charge was refused, but we find no evidence of that statement in the record. The holding in this case is not in conflict with our holding in the case of Mutual Life Insurance Co. v. Rhoderick, 164 S. W. 1067, nor with any other case cited by appellees.

[11] In the seventh paragraph of the motion appellees contend that we erred to their prejudice in refusing to rule specifically upon the appellant's assignment of error and in reversing the case upon a general discussion thereof. We did not refuse to rule specifically, because no one ever requested us to do so. We know of no statute or rule of the Supreme Court requiring Courts of Civil Appeals to take up the assignments in appellant's brief and dispose of them seriatim. If we prefer to dispose of the case by a general discussion of the issues presented rather than by a consideration of appellant's assignments in detail, and appellant does not object, certainly the appellees have no right to complain.

It is urged in the eighth paragraph that we erred in stating that the memorandum of January 15, 1910, provides that the note was not to become effective until the remainder of the Butt stock was so placed, but we should have stated that the "obligation" was not to become effective until the Butt stock was placed, and it is asserted that the word

"obligation" plainly does not refer to the note. In our opinion, the word "obligation" refers to the note, and nothing else, and appellees have so considered it until they came to prepare their brief. In reply to defendant Sanger's answer, setting out the memorandum which we have quoted above, appellees did not plead that the condition had no reference to the note, as they now contend, but in answer thereto pleaded as follows:

"Plaintiff says it is not true, as alleged in paragraph 2 of subdivision 3 of said amended answer, that the alleged condition mentioned in said instrument upon which said note was to become a binding and valid obligation, and the placing of the remainder of the stock of said Butt in the Panhandle Packing Company, was never performed, but says, on the contrary, that it was informed by the defendant and said Butt that same had been so placed, and, so being informed, he believes, and upon such information and belief alleges, that same had been so placed and said condition performed at and before the said delivery of said note to plaintiff."

According to that allegation appellees construed the condition and the word "obligation" exactly as we have construed it in the opinion. In reply to the fourth paragraph of appellant's answer, appellees pleaded as follows:

"Plaintiff says it is not true, as alleged in the fourth paragraph of subdivision 3 of said amended answer, that it had any knowledge or notice of the failure of any condition upon which the note sued on was given, but, on the contrary, says that both defendant and Butt advised and represented to it that the alleged condition had been fully performed, and but for such representations, and plaintiff's reliance thereon, it would not have made said advances, nor would any of said advances have been made to the said Butt, and to allow defendant's plea would be a fraud upon plaintiff and others, who in good faith made the said advances, relying upon defendant's liability."

There is not a syllable throughout the length and breadth of appellees' pleading by which the theory now advanced with reference to the word "obligation" is even suggested. In order that we may not again be charged with having "cavalierly treated" this phase of the case, we will further quote from the record to show that during the trial and in the introduction of the testimony the idea that the obligation referred to was an undertaking on the part of Butt to raise $10,000 to take out 100 shares of stock in the packing company in the name of Sanger, and then use the note with his other stock to raise the money for finishing the packing plant, was never in the minds of appellees or their attorneys. W. H. Fuqua testified:

"Mr. Butt and Mr. Sanger discussed the matter in my presence about placing of all this stock or arranging for the placing of it, and that was the occasion of making up this $2,000 note with the other stock, so it all might then and there be placed as soon as Mr. Sanger's stock would be issued and delivered to him. Of course, this $10,000 would not have been effective until Mr. Sanger received his stock. Before that stock could be issued, or rather delivered, that amount of money must be in the hands of the packing company."

Again:

"This was late Saturday evening on January 15th, I think, and those papers, together with the notes, were handed to me. I do not know what you call closed. The papers were signed and the notes were signed. The money passed on January 29th. The matter had been held pending that time to get the balance of stock placed. It was held up to get the stock."

S. H. Madden, one of the attorneys for appellees, and the party selected by appellant and Butt to draw up their guaranty agreement, testified in part as follows:

"I agreed that, if they would place all that stock and get all that matter fixed up so that this would not be another fall-down; that I would not lose that money; that it would not be just throwing it in; would take the last $500 that they lacked."

He further stated that Sanger's $10,000 would be just "thrown in" unless the $15,000 was raised so that the plant could be started. The memorandum attached to the $2,000 note which was drawn up at the same time contains this recital:

"This is simply given for the purpose of taking up an additional $2,000 worth of stock that is unprovided for," etc.

Appellees do not contend that the words "this is" do not apply to the $2,000 note. Then why should we construe the words "this obligation," in the other memorandum, to apply to anything than the note to which it had referred and to which it was intended it should be attached. If the words "this obligation" referred to an undertaking on the part of Butt for the benefit of Sanger, it should not have been left with the note but should have been delivered to Sanger. In our opinion, it was not intended to, and does not, bind Butt to do anything. We think our statement that the memorandum provides that the note was not to become effective until the remainder of the Butt stock was placed is correct. It is certainly the construction put upon it by all parties to the transaction, as clearly shown by the record in this case, and we are not willing to adopt the strained construction insisted upon by appellees, which is apparently an afterthought, and is unsupported by anything in the record.

Appellees complain that we erred in holding that it appears from the record that the $2,000 note executed by Sanger to Butt had been delivered to the company and the certificates of stock issued and pinned thereto, but that they had not been delivered to any one, and they recklessly assert that:

"It appears from the undisputed testimony that the company had used this note in payment of the indebtedness."

The only evidence we have been able to find in the record upon this question is that of W. H. Fuqua and F. W. Popham, the secretary treasurer of the company. Fuqua's testimony is:

"I think the $2,000 note executed by Sanger at the same time as the $10,000 note was turned over to the packing company, and it is probable

that the packing company issued the stock upon the turning over of said note, or it is possible that the note was used to pay some of its obligations. The Panhandle Packing Company was in debt, and there were individual notes used for that. If it was used to pay indebtedness, the packing company took the note and used it."

It is clear from Fuqua's testimony that appellees' assertion is not true. F. W. Popham, the proper custodian of the instrument, testified with reference to it as follows:

"The $2,000 of stock referred to in the memorandum signed by Butt was issued to O. W. Butt. It was never paid for. Butt delivered in payment for it his note, together with Mr. Sanger's note. The stock was issued on the 17th, but if I remember rightly, it was not turned over to Butt, but was held together with the note. It has disappeared from my possession. I do not have any recollection of delivering it to any one. My recollection is that it was kept together with these notes at that time."

There is not a scintilla of testimony in the record with reference to the disposition of this $2,000 note and when we consider that it was long past due at the date of the trial, and had never been presented to any one for payment, appellees' statement is manifestly incorrect. It is the duty of counsel to fully, faithfully, and fairly quote the record and frame their propositions in strict accordance with the facts. What we have said in Whittington & Sweeney v. K. C., M. & O. Ry. Co., 153 S. W. 689, is applicable here.

Appellees further say, in referring to the Slaughter stock (which was never paid for, but was returned to the company and Butt required to execute his note for the amount), the proof shows that both the note and the shares were left in possession of the company, and "it is fair to presume that this was done with a view of enabling the company to use the shares with the note of Butt attached in payment of indebtedness of the company, as had been done in the case of the $10,000 of shares for which Butt had given his note, indorsed by Al Popham, and the Western Stockyards Company, which would have been entirely legal." True, if Butt's note given for the $500 of stock which Slaughter refused to take had been accepted by any creditor in lieu of money due it from the packing company, it would have been a placing of the stock within the law, as well as within the contemplation of the parties, but F. W. Popham, the custodian of the $500 note made by Butt for the Slaughter stock, testified with reference to it as follows:

"The draft was not paid. That stock has never been paid for except when it was returned. Mr. Butt gave his note to the company, and that was held, together with the stock. The note has never been paid, and the stock has never been delivered to any one, except it was delivered to Mr. Butt, and by him indorsed back and returned to the company."

It is clear from this history of the stock that the company has never received a dollar, either in the way of cash or credit upon its indebtedness, for this $500 note and

stock attached to it. The same fact exists with reference to the $2,000 note above mentioned, and we therefore insist that we are correct in stating that at least $2,500 of Butt's stock has never been placed.

No additional authorities are presented, aside from the positive assertion by appellees' counsel as to what the law is and "will be," and, believing that we have properly disposed of the case upon the first hearing, the motion is overruled.

HENDRICKS, J., not sitting.

### Second Motion for Rehearing.

HALL, J. [12] Appellees have filed a second motion for rehearing, in which one of their attorneys, W H. Kimbrough, confesses that he is responsible for the irrelevant and impertinent matter which we criticized in our opinion disposing of the first motion. Our criticism is therefore limited accordingly. On account of the irrelevant and impertinent matter contained in this motion, it is ordered stricken from the files.

HENDRICKS, J., not sitting.